**Parrin and Sheila JONES**

v.

**Shawn FAUST**

**Appeal of: Medical Evaluation Specialists and Dr. Roy Lefkoe**

Superior Court of Pennsylvania.

Argued March 23, 2004.
Filed May 24, 2004.
Reargument Denied July 26, 2004.

Robert P. Dennison, King of Prussia, for appellant.

Allen L. Feingold, Philadelphia, for appellees.

Before: STEVENS, MONTEMURO * and KELLY, JJ.

MONTEMURO, J.:

¶ 1 In this matter, we are asked to review three orders of the Court of Common Pleas of Philadelphia County involving discovery of medical records.

¶ 2 Underlying these appeals is an action in which plaintiffs Parrin and Sheila Jones sought recovery from defendant Shawn Faust for injuries suffered in an automobile accident. During the course of litigation, Appellant Dr. Roy Lefkoe was retained by Faust to perform independent medical examinations of the Joneses, who subsequently subpoenaed Dr. Lefkoe and Medical Evaluation Specialists (MES) to produce the medical records of a number of John and Jane Does. Although the subpoenas were quashed after a hearing, the trial court entered the orders presented for our review. The first of these, entered May 5, 2003, directs MES to provide the Joneses with three months' worth of medical reports with the patients names redacted;[1] the second, of July 14, 2003, directs

---

* Retired Justice assigned to Superior Court.

1. The typewritten portion of the May 5th Order, *inter alia,* quashes the subpoenas. Be-

MES to pay a fine; and the third, of July 28, 2003, directs MES to provide one year's worth of Dr. Lefkoe's reports or suffer enumerated sanctions, and orders both MES and Dr. Lefkoe to pay a fine for failure to comply with prior orders.

■ ¶ 3 Prior to examination of Appellants' claims, we must determine whether because of untimeliness or lack of appealability these orders are properly before us.

■ ¶ 4 Citing *Baranowski v. American Multi–Cinema*, 455 Pa.Super. 356, 688 A.2d 207, 208 n. 1 (1997), *appeal denied*, 550 Pa. 675, 704 A.2d 633 (1997), Appellees first correctly argue that, in general, discovery orders are not final, and are therefore unappealable. However, Pa.R.A.P. 313(b) provides that appeals may be taken from collateral orders, that is, those which are "separable from and collateral to the main cause of action where the right is too important to be denied review and the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost." That description seems apt here as the discovery involves non-party defense experts; the orders compel production of private and confidential medical information of non-parties; and, once disclosed, the confidentiality attaching to this information is lost. Thus, as in *Gocial v. Independence Blue Cross*, 827 A.2d 1216, 1220 (Pa.Super.2003), and *Dibble v. Penn State Geisinger Clinic, Inc.*, 806 A.2d 866 (Pa.Super.2002), *appeal denied*, 573 Pa. 666, 820 A.2d 705 (2003), we find here, too, that discovery orders involving privileged material are nevertheless appealable as collateral to the principal action.

■ ¶ 5 The question then becomes whether the appeal from the May 5th Order is untimely, having been filed on August 1, 2003. Appellants argue that they received no notice of the May 5th Order until they attended a July 14, 2003, hearing. The docket reveals an entry to the effect that notice of the May 5th Order was given on May 5th. Under Pa.R.A.P. 108(b), the date of entry of an order subject to the Rules of Civil Procedure shall be the day on which the clerk makes notation in the docket that Rule 236(b) notice has been given. Moreover, this Court may not enlarge the 30–day period for appeal. Pa.R.A.P. 105(b).

■ ¶ 6 However, the timeliness of appeals from collateral orders depends not upon entry of the order itself, but upon resolution of the collateral matter. *In re Estate of Petro*, 694 A.2d 627, 631 (Pa.Super.1997), *appeal denied*, 550 Pa. 719, 706 A.2d 1213 (1997). And, although collateral orders may be appealed within 30 days of their entry, the substance of the collateral order is not forever precluded when an appeal is not taken within this period. *Id.* As the order involved here is a discovery matter, by definition preliminary and in addition concerned with resolution of collateral issues, clearly no finality is implicated; the appeal from the May 5th Order is therefore timely, as are the appeals from the July 14th and 28th Orders. We may therefore address Appellants' claims.

neath it, a holographic postscript appears which states "By Agreement, 3 mos worth of IME [independent medical evaluation] reports from MES w/ patients names redacted." Appellants argue that, despite the trial court's apparent finding otherwise, the agreement referred to involved only the parties in the underlying action. The record contains an affidavit from the president of MES' East Coast Operations to the effect that neither he nor any other representative of MES, including legal counsel, attended the hearing at which the agreement was reached, nor was MES represented by counsel for defendant Faust. Nothing in the record contradicts these statements, and there is no dispute that MES and Dr. Lefkoe are non-parties. Thus Appellants' identification of who entered into the agreement to produce the medical records seems likely.

■ ¶ 7 Appellants have ostensibly presented this Court with 10 issues on appeal. However, shorn of prolixity and repetitiveness, what emerges is a claim that the trial court's orders for production of medical records constitute violations of various constitutional and statutory guarantees of privacy and confidentiality, as well as violations of due process and the Rules of Civil Procedure. Finally, the contention is advanced that imposition of sanctions on Dr. Lefkoe for failure to comply with prior orders was improper when no prior order mentions him; the July 28th Order imposing sanctions refers to two prior orders and neither of these, the May 5th and July 14th Orders, direct Dr. Lefkoe to perform or refrain from performing any act.

■ ¶ 8 To address Appellants' issues in reverse order, we first note that

[t]he decision whether to sanction a party for a discovery violation and the severity of such a sanction are matters vested in the sound discretion of the trial court. We will not reverse a trial court's order imposing such a sanction unless the trial court abused its discretion.

\* \* \* \* \* \*

This Court has identified the factors for trial courts to consider when determining an appropriate sanction under [Pa.] Rule.[C.P.] 4019:

(1) the nature and severity of the discovery violation;

(2) the defaulting party's willfulness or bad faith;

(3) prejudice to the opposing party;

(4) the ability to cure the prejudice; and

(5) the importance of the precluded evidence in light of the failure to comply.

*Judge Technical Servs., Inc. v. Clancy*, 813 A.2d 879, 889 (Pa.Super.2002) (citation omitted).

¶ 9 The text of the May 5th Order has been noted above. *See supra* at footnote 1. The Orders of July 14th and July 28th (in pertinent part) read as follows:

AND NOW, this 14 day of July, 2003, it is hereby ORDERED AND DECREED that [section of order crossed out]. IT IS FURTHER ORDERED AND DECREED M.E.S. shall pay a sanction of $350.00 within 14 days for entering into agreements which became a court order.[2]

IT IS FURTHER ORDERED AND DECREED that Dr. Roy Lefkoe and M.E.S. shall each pay plaintiff's counsel the sum of $500.00 for their failure to comply with a properly served subpoena and two prior Orders of Court. Said fees and sanctions shall also be paid within ten (10) days from the date of this Order as well as any prior sanctions or costs.

¶ 10 As these texts make clear, Dr. Lefkoe was sanctioned for failure to comply with two orders which never mention him.[3] Since Dr. Lefkoe has never been ordered to do anything, punishing him for noncompliance seems Orwellian at best, making nonsense of the standards to be applied in determining the propriety of such a sanction.

■ ¶ 11 Appellants' remaining claim addresses the possible violation of privacy and confidentiality guarantees.

---

2. Presumably the phrase "and failed to comply therewith," or words to that effect have been omitted, otherwise the order is meaningless. The accuracy of the court's statement has been discussed above. *See supra* at footnote 1.

3. It should be pointed out that the record contains no other orders to which this reference might apply.

The question before us concerns the strength of such guarantees in light of certain evidentiary rules. The first of these is the proposition that, because the IME's performed by Dr. Lefkoe were done in the context of litigation, no physician/patient relationship exists between him and the John and Jane Does whose records are sought. *See Elia v. Erie Insurance Exchange,* 398 Pa.Super. 433, 581 A.2d 209, 212 (1990), *appeal denied,* 537 Pa. 662, 644 A.2d 1200 (1994). In any event, our Supreme Court has held that "the privilege is limited to information which would offend the rationale of the privilege, *i.e.,* information directly relating to the patient's communication and thus tending to expose it. Moreover, to fall within the terms of the [Pennsylvania statute regarding privilege, 42 Pa.C.S.A. § 5929[4]] communications must tend to blacken the character of the patient." *In Re June 1979 Allegheny County Investigating Grand Jury,* 490 Pa. 143, 415 A.2d 73, 77 (1980). Here, the information is being sought expressly for the purpose of testing the credibility of the doctor's responses to "objective signs of injury," (Appellees' Brief at 8), and do not, at least theoretically, involve disclosure of patient communications at all.

¶ 12 The second evidentiary principle involved here concerns the use the plaintiffs in the underlying suit sought to make of the information, which is explained by the Joneses as "impeachment of [Dr. Lefkoe's] anticipated testimony by showing that in defense medico-legal examinations, the doctor routinely failed to uncover objective signs of injury, thereby exposing his pro-defense bias." (*Id.*).

¶ 13 This Court has held that

the law will not consider evidence that a person has done a certain act at a specific time as probative of a contention that he has done a similar act at another time. While the commission of an act charged cannot be proved by showing the commission of a like act at a different time, an exception to this rule exists where knowledge or intent is a material fact to be proved.

*General Equipment v. Westfield Insurance Company,* 430 Pa.Super. 526, 635 A.2d 173, 185 (1993).

¶ 14 Since the reliability of the diagnosis is at issue here, the records sought are germane to the issue of the doctor's bias. It is at this point that the question arises as to what degree of privacy and confidentiality is to be afforded medical information where no privilege is involved. Our Supreme Court has recognized that the privacy interests protected by the federal Constitution receive the same protections from Pennsylvania's Constitution. In *1979 Allegheny County Investigating Grand Jury, supra,* the Court quoted *Whalen v. Roe,* 429 U.S. 589, 599–600, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977), for the proposition that

[w]hile its sources and limits may be disputed, there can be no doubt that the United States Constitution guarantees a right to privacy. Cases concerned with the constitutional protection of privacy "have in fact involved at least two different kinds of interests. One is the individual interest in avoiding disclosure of personal matters, and another is the in-

---

4. 42 Pa.C.S.A. § 5929 provides as follows:
   No physician shall be allowed, in any civil matter, to disclose any information which he acquired in attending the patient in a professional capacity, and which was necessary to enable him to act in that capacity,

which would tend to blacken the character of the patient, without consent of said patient, except in civil matters brought by such patient for damages on account of personal injuries.

terest in making certain kinds of important decisions."

*1979, supra* at 77 (citations omitted).

¶ 15 As in *1979*, the John and Jane Does whose records are sought here have a privacy interest in the disclosure of matters personal to them. However, unlike the situation in that case where the members of the grand jury who were to hear the evidence were sworn to secrecy, no such oath would be required here.[5] Moreover, as noted above, the information sought is for impeachment purposes, an objective which could be accomplished by other, less intrusive, means, *e.g.*, the contrary testimony of another physician, or even by questions as to how many cases the doctor has seen, and of those how many have received diagnoses of minimal injury or none.

¶ 16 Our Supreme Court has noted on more than one occasion that "the right [to privacy] is not an unqualified one; it must be balanced against weighty competing private and state interests." *Stenger v. Lehigh Valley Hospital Center,* 530 Pa. 426, 609 A.2d 796, 800 (1992) (citation omitted). The interest here, a collateral evidentiary one, is not so weighty as to overbalance the need for confidentiality. Given this result, we decline to address the effect of statutory provisions, the Rules of Civil Procedure, or any other authority on the ordered disclosures.

¶ 17 Accordingly, the trial court's Orders directing the production of medical records are reversed, and the Order imposing sanctions vacated.

---

5. Although the Court's May 5th Order specified that patients' names were to be redacted, the July 28th Order directing that one year's worth of medical records be disclosed placed no such limitation on the material to be surrendered.