T.M., as parent and legal guardian for D.M., a minor, Appellee

v.

ELWYN, INC. and Elwyn Alternative School and Markeith Eugene Aikens

Appeals of Elwyn, Inc. and Elwyn Alternative School, Appellants.

Superior Court of Pennsylvania.

Submitted Oct. 29, 2007.

Filed June 4, 2008.

John J. Hare, Philadelphia for appellants.

Patricia V. Pierce, Philadelphia and Robert T. Tomlinson, Richboro, for appellees.

Before BENDER, TAMILIA and COLVILLE *, JJ.

OPINION BY BENDER, J.:

¶ 1 Elwyn, Inc. and Elwyn Alternative School (collectively, "Elwyn") appeal from two discovery orders, both dated March 23, 2007, and docketed on March 26, 2007. For the following reasons, we hold that the discovery orders at issue are immediately appealable pursuant to the collateral order doctrine and that the trial court failed to

---

* Retired Senior Judge assigned to the Superior Court.

provide an adequate analysis to justify the breadth of the discovery orders. Accordingly, we vacate the orders and remand to the trial court for further proceedings consistent with this opinion.

¶ 2 T.M., as parent and legal guardian of her minor son, D.M., commenced this action against Elwyn in December of 2005. In her complaint filed subsequently in March of 2006, T.M. asserted that Elwyn Alternative School "is designed to handle and educate children with mental and behavioral issues." Complaint, 3/16/06, at ¶ 12. According to the complaint, D.M. was sexually assaulted by a school counselor, Markeith Eugene Aikens,[1] on several occasions while D.M. was a student at the Elwyn Alternative School. *Id.* at ¶¶ 12, 24–53. T.M. asserted claims of, *inter alia*, negligent hiring, training, and supervision against Elwyn based on the conduct of its employee, Aiken. Later, in April of 2006, an amended complaint was filed in which D.M. was substituted as the sole plaintiff because, by that point, he was an adult individual.[2]

¶ 3 On October 10, 2006, D.M. filed a motion indicating that during the course of discovery, he learned of several other lawsuits against Elwyn involving allegations of sexual assault by Elwyn employees on and off school grounds. Plaintiff's Motion, 10/10/06, at ¶ 3. Accordingly, D.M. served the following Requests for Admissions on Elwyn:

Defendant Elwyn, Inc. has had students other than [D.M.] accuse their teachers and/or employees of sexually assaulting and/or abusing the students.

Defendant Elwyn, Inc. has been sued by students other than [D.M.] because of sexual abuse.

Defendant Elwyn, Inc. has been sued by students other than [D.M.] because of negligent supervision.

Defendant Elwyn, Inc. has been sued by students other than [D.M.] because of battery.

Defendant Elwyn, Inc. is currently being sued by other students/parents other than [D.M.] because of sexual abuse.

Defendant Elwyn, Inc., has an excess insurance policy that is applicable to [D.M.'s] lawsuit.

Defendant Elwyn, Inc., has an excess insurance policy is for [sic] $50,000,000.00 (fifty million dollars) that is applicable to [D.M.'s] lawsuit.

*Id.* at ¶ 6. For each proffered admission, D.M. requested, inter alia, that Elwyn provide "all relevant pleadings and/or discovery" related to other cases of sexual abuse, battery, and negligent supervision. D.M. argued that he "has a right to learn about other lawsuits that are similar to his lawsuit." *Id.* at ¶ 9. D.M. "sought this information to establish evidence of habit, negligent hiring, negligent supervision, notice, and other important elements of [his] claim...." D.M.'s brief at 4.

¶ 4 With regard to all but the last two requests for admissions, Elwyn objected on the basis that the documents requested

---

1. A default judgment was entered against Aikens, who was also named as a defendant in this case, for his failure to respond to T.M.'s complaint. Additionally, following investigation by the Pennsylvania State Police, criminal charges were filed against Aikens, and he eventually pled guilty to corruption of a minor. Complaint at ¶ 88. Aikens is not involved in this appeal.

2. For some unknown reason, the captions of the plaintiff's subsequent pleadings vacillate between designating T.M. as guardian and parent of D.M. (including the notice of appeal), and D.M. in his own right as an adult individual (including the use of his full name instead of initials). Given these inconsistencies, we will not revise the instant caption but, from this point forward, we will refer to the plaintiff in this case as "D.M."

were privileged (*i.e.,* Elwyn asserted the attorney client privilege, any other applicable privilege, and protection by various statutes such as: the Health Insurance Portability and Accountability Act of 1996 (HIPAA), at Pub.L. No. 104–191, 110 Stat. 1936 (1996); the Family Educational Rights and Privacy Act of 1974 (FERPA), at 20 U.S.C. § 1232g; the Mental Health Procedures Act (MHPA), at 50 P.S. §§ 7101–7116; and various child protection statutes). Elwyn further objected on the basis that the requests were irrelevant to the case at hand (because, *e.g.,* Elwyn runs various programs and facilities other than the Elwyn Alternative School at issue), and on the basis that compliance with the overly-broad requests would be unduly burdensome. Additionally, Elwyn's defense attorneys sought to quash a subpoena that had been served on them by D.M. seeking all "documents, correspondence, pleadings, discovery requests, [and] discovery responses for and current lawsuits against Elwyn, Inc. in Philadelphia" including cases under other specified docket numbers, which request had been premised on D.M.'s contention that the same law firm defended each case. Elwyn objected to D.M.'s requests, characterizing them as a "fishing expedition."

¶ 5 On May 12, 2006, D.M. filed a motion to strike Elwyn's objections and non-responses to D.M.'s request for admissions. The parties engaged in motions practice with associated responsive pleadings on these discovery issues throughout most of 2006, which also included a motion for sanctions against Elwyn, filed by D.M.

¶ 6 Finally, on March 26, 2007, the trial court entered the following order:

> ... it is hereby **ORDERED** and **DE-CREED** that upon consideration of Plaintiff's Motion to Strike Defendants' Objections and Non–Responses to Plaintiff's Requests for Admissions, and De-

fendants' Response thereto, that said Motion is **GRANTED,** and Defendants shall fully answer, without objections, Plaintiff's Request for Admissions which were served on August 18, 2006, within twenty (20) days of the date of this order.

Order "A," 3/26/07. The court also entered the following order on the same date, to address D.M.'s motion for sanctions:

> ... upon consideration of Plaintiff's Motion for Sanctions, filed November 28, 2006, and Defendants' response thereto, the following is **ORDERED:**
>
> 1. Within thirty (30) days of the date of this Order, Defendants, at their own expense, shall re-produce for depositions Defendants' employees, James Ziegler, Thomas Fitti, [etc.]. . . .
> 2. Defendants shall produce for depositions Defendants' employees: Dennis Ritrovato, Frank Guthridge, [etc.]. . . .
> 3. Defendants' objections to Plaintiff's Subpoenas are sustained in part and denied in part. Plaintiffs may issue Subpoenas and obtain all publicly filed pleadings and any documents falling within the scope of ¶ 4.
> 4. Within the next 30 days, Defendants shall produce any and all reports, documents, complaints, pleadings, e-mails, correspondence, expert reports, discovery responses, and any other documents concerning or relating to sexual contact between any residents and/or clients of Elwyn, Inc., and between residents and/or clients of Elwyn, Inc. and any employee, contractor, consultant, volunteer or other custodian which was alleged to have occurred within the 10 years preceding April 15, 2004, including but not limited to all related incident report forms, witness statements, investigatory reports, supervisor logs, shift

logs, e-mails, correspondence, internal memoranda, risk management analysis, root cause analysis, and remedial measures taken. The information which must be produced pursuant to this order includes, but is not limited to, the kind required to be kept for all of Elwyn's clients and reported pursuant to 42 C.F.R. § 483.420 pertaining to the protection of clients' rights. The information shall be produced regardless of whether the particular Elwyn client is considered to be a participant in an intermediate care facility, a residential treatment program or facility, a "day student" or any other classification of Elwyn, Inc. or is categorized as a mentally retarded or mental health client for internal, funding, or other purposes. The information to be produced shall be limited to allegations of sexual contact. This order applies to Elwyn, Inc., and each Elwyn subsidiary, program, division, and department located in Pennsylvania and New Jersey. All identifying information is to be redacted and replaced with an identifier number.

. . .

Order "B," 3/26/07.

■ ¶ 7 Elwyn sought to have the trial court amend the discovery orders to include a statement that the orders involved "a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the matter[.]" 42 Pa.C.S. § 702(b). However, since the trial court did not take any action on this request for appellate certification, it was deemed denied by operation of law after the expiration of thirty days. Pa.R.A.P. 1311(b). Accordingly, Appellants filed petitions for review with our Court as per the procedures in Chapter 15 of our Rules of Appellate Procedure. *See* Pa.R.A.P. 1311 note (indicating that where trial court refuses to certify order for appeal pursuant to 42 Pa.C.S. § 702(b), the proper mode of "determining whether the case is so egregious as to justify prerogative appellate correction of the exercise of discretion" by the trial court is by filing a petition for review with the appellate court). Contemporaneously, however, Elwyn filed notices of appeal in which it purported to take appeals as of right from the discovery orders pursuant to the collateral order doctrine and Pa.R.A.P. 313. Those notices of appeal were pending when our Court, upon examination of the petitions for review, issued orders stating, in their entirety: "[t]he court hereby DENIES the petition for review." Order, 7/19/07; Order 8/10/07. Now, D.M. argues that, pursuant to the law of the case doctrine, our Court's denial of the petitions for review "compels the conclusion" that our Court "implicitly" held that the discovery orders did not involve a claim or right "too important to be denied appellate review" for purposes of a collateral appeal under Pa.R.A.P. 313.

■ ¶ 8 We disagree with D.M.'s argument. The law of the case doctrine provides that "judges of coordinate jurisdiction sitting in the same case should not ordinarily overrule each other's decisions." *Kroptavich v. Pennsylvania Power and Light Co.*, 795 A.2d 1048, 1054 (Pa.Super.2002) (citation omitted). However, the per curiam panel of our Court that denied the petitions for review provided no further reasoning with regard to why the petitions were denied. Conceivably, the panel may have denied the petitions for review after recognizing that there were other notices of appeal on the docket filed pursuant to the collateral order doctrine.

■ ¶ 9 Indeed, such was the case in *Castellani v. Scranton Times, L.P.*, 916

A.2d 648, 652 (Pa.Super.2007). The appellants in that case, who were also challenging a discovery order, filed notices of appeal pursuant to the collateral order doctrine, but also contemporaneously filed petitions for permission to appeal from an interlocutory order. Our Court dismissed the petitions for permission to appeal as moot on the basis that the collateral order doctrine applied to effectuate an appeal as of right, thereby preserving, rather than quashing, the notice of appeal that had been filed under Rule 313. Although the instant case is somewhat different in that we merely "denied" the petitions for review rather than dismissing them as moot, the result should be no different, *i.e.*, Appellants should be permitted to pursue a collateral appeal as of right if the discovery orders at issue qualify.[3]

 ¶ 10 Accordingly, we examine the appealability of the discovery orders pursuant to the collateral order doctrine. "[I]n general, discovery orders are not final, and are therefore unappealable." *Jones v. Faust*, 852 A.2d 1201, 1203 (Pa.Super.2004). However, "discovery orders involving privileged material are nevertheless appealable as collateral to the principal action" pursuant to Pa.R.A.P. 313 ("Collateral Orders"). *Id.* Rule 313(a) states that "[a]n appeal may be taken as of right from a collateral order of [a] . . . lower court." Pa.R.A.P. 313(a).

A collateral order is an order separable from and collateral to the main cause of action where the right involved is too important to be denied review and the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost. Pa.R.A.P. 313(b). "A discovery order is collateral only when it is separate and distinct from the underlying cause of action." *Feldman v. Ide*, 915 A.2d 1208, 1211 (Pa.Super.2007).

¶ 11 As this Court explained recently:

Prior to the decision of the Pennsylvania Supreme Court in *Ben v. Schwartz*, 556 Pa. 475, 729 A.2d 547 (1999), Pennsylvania courts did not often entertain interlocutory appeals from discovery orders,

---

**3.** We further note that our Supreme Court's promulgation of Pa.R.A.P. 1316 ("Incorrect Use of Petition for Permission to Appeal or Petition for Review") has no effect on the above analysis regarding the law of the case doctrine. Rule 1316, which became effective on February 7, 2005, provides for the treatment of a petition for review as a notice of appeal if the order appealed from is actually a collateral order as of right. This rule was promulgated in response to, and superseded, *dicta* in *Thermo–Guard, Inc. v. Cochran*, 408 Pa.Super. 54, 596 A.2d 188, 192 (1991), in which our Court stated that "in the future, where a petition for permission to appeal seeking review of a final order, appealable as of right, or of an interlocutory order made appealable as of right . . . is filed, this court should simply deny the petition." *See* Pa.R.A.P. 1316 note. Now with Rule 1316, in such cases, we "shall" treat a request for discretionary review of an order that is, in actuality, immediately appealable, as a notice of appeal. Pa.R.A.P. 1316(a). This protects a litigant from losing his or her right to appeal for the failure to file a notice of appeal in conjunction with a petition for review. After the promulgation of Rule 1316, an oft-cited appellate treatise suggested that an appellant who is unsure of whether an order is appealable as of right as a collateral order *should* now only seek interlocutory review by permission only, because if the order is collateral, our Court will now treat it as such due to Rule 1316. 20 G. RONALD DARLINGTON ET AL., PENNSYLVANIA APPELLATE PRACTICE, § 313.3 (2007–2008 ed.). Although that appears to be an accurate statement, we conclude that there is nothing in the new rule that precludes the filing of both a collateral appeal and a petition for review, and that nothing in the rule or the treatise suggests that, in circumstances such as those presented here, a contemporaneously filed collateral appeal must be quashed on the basis of the law of the case doctrine merely because our Court denied an associated petition for review.

unless the discovery order was not related in any way to the merits of the action itself. *See, e.g., Doe v. Commonwealth, Dept. of Public Welfare,* 105 Pa.Cmwlth. 482, 524 A.2d 1063, 1065 (1987); *see also Gottschall v. Jones & Laughlin Steel Corp.,* 333 Pa.Super. 493, 482 A.2d 979 (1984) (semble). In *Schwartz,* the Pennsylvania Supreme Court revised this rule and held that an appeal from a discovery order raising a question of the application of a privilege is separable from the underlying issue, so long as the issue of privilege may be addressed by an appellate court without analysis of the underlying issue. *Schwartz,* at 483, 729 A.2d at 551–52.

*Castellani,* 916 A.2d at 652. In *Schwartz,* the plaintiffs in a dental malpractice case sought the investigative file maintained on the defendant dentist by the Bureau of Professional and Occupational Affairs, who contested the disclosure. The Bureau contended that the information subpoenaed was protected by governmental/executive privilege and privilege under a statute existing at that time, the "Right–to–Know Law," which had been codified at 65 P.S. §§ 66.1–66.9. *Schwartz,* 729 A.2d at 549. The Bureau also asserted the doctor-patient privilege based on its contention that the file included medical information and records of persons not involved in the lawsuit. *Id.* Finally, the Bureau asserted that "compliance with the subpoena would result in unreasonable annoyance, oppression, burden and expense because investigations relating to the large volume of complaints received annually consume its limited resources." *Id.* Nevertheless, the trial court directed the Bureau to comply and produce the file. *Id.* The Bureau appealed from the order dismissing its motion to quash and directing it to produce the file, but the Commonwealth Court quashed the appeal as interlocutory. *Id.* at 550.

¶ 12 The *Schwartz* case proceeded to the Pennsylvania Supreme Court, which held that the trial court's order "compelling the Bureau of Professional and Occupational Affairs to produce its investigative file pertaining to complaints filed against a dentist, [was] appealable under the exception to the final order rule for collateral orders." *Id.* at 549. The Court reasoned that (1) "the issues of privilege raised by the Bureau [could] be addressed without analysis of the alleged negligence of the dentists[,]" thereby meeting the requirement of "separability" for purposes of the collateral order doctrine; (2) the Bureau's assertion that the file was subject to various privileges met the "importance" prong of the collateral order doctrine because it involved "rights rooted in public policy" and impacted "individuals other than those involved in this particular litigation" thereby outweighing the countervailing interests of avoiding piecemeal litigation or delay; and (3) the Bureau's claim would be irreparably lost (thereby meeting the third prong of the collateral order doctrine) if immediate appellate review was not granted because, once purportedly privileged material is divulged, "the disclosure of documents cannot be undone" and subsequent appellate review would be rendered moot. *Id.* at 552. *See also Berkeyheiser v. A–Plus Investigations, Inc.,* 936 A.2d 1117, 1123–24 (Pa.Super.2007) ("Pennsylvania courts have held that discovery orders involving potentially confidential and privileged materials are immediately appealable as collateral to the principal action."); *Dodson v. DeLeo,* 872 A.2d 1237 (Pa.Super.2005) (concluding order granting disclosure of documents asserted to be protected by Peer Review Protection Act, 63 P.S. §§ 425.1–425.4, was appealable under collateral order doctrine); *McGovern v. Hospital Service Ass'n of Northeastern Pennsylvania,* 785 A.2d 1012, 1013 n. 1

(Pa.Super.2001) (citing *Schwartz* to conclude that order seeking discovery of materials allegedly protected by attorney-client privilege was immediately appealable as a collateral order under Rule 313).

¶ 13 As in *Schwartz,* the discovery orders at issue in the instant case meet the requirements of the collateral order doctrine. We are able to examine the issues of privilege raised by Elwyn without analyzing the underlying issues in the case, *i.e.,* Elwyn's alleged negligence. Also, as the above cases recognize, a party's assertion that the requested materials are subject to various privileges, especially when the materials may involve sensitive mental health information about non-parties, implicates the "importance" prong of the collateral order doctrine because the privacy rights involved are deeply rooted in public policy. Finally, if we do not review the propriety of the discovery orders at this point, Elwyn's claim of privilege would be irreparably lost, as it would be forced to disclose information in conformance with the trial court's discovery orders. Such disclosure could not be undone in a subsequent appeal.

■ ¶ 14 Since the requirements of the collateral order doctrine are met, we now proceed to examine the issue raised in the instant appeal, set forth as follows in Elwyn's brief pursuant to Pa.R.A.P. 2116(a):

> WHETHER THE TRIAL COURT ERRED BY COMPELLING THE PRODUCTION OF CONFIDENTIAL AND PRIVILEGED INFORMATION, INCLUDING PROTECTED MEDICAL, MENTAL HEALTH, AND EDUCATIONAL INFORMATION, IN [ELWYN'S] RECORDS AND IN THE DISCOVERY PRODUCED IN OTHER LAWSUITS?

Elwyn's brief at 6. In reviewing the propriety of a discovery order, we determine whether the trial court committed an abuse of discretion and, to the extent that we are faced with questions of law, our scope of review is plenary. *Berkeyheiser,* 936 A.2d at 1125.

¶ 15 Elwyn contends that the discovery orders in question require it to disclose information in contravention of evidentiary privileges, including the attorney-client privilege, and in violation of various statutes such as HIPAA, MHPA, and FERPA. Throughout his brief, on the other hand, D.M. contends that the discovery orders do not violate any privileges because they only require production of "documents and records of an *administrative, supervisory, or employee records* nature relating to sexual contact between [Elwyn's] employees or agents and [Elwyn's] students." D.M.'s brief at 21. However, a plain reading of the discovery orders reveals that they are broader than contended by D.M. For example, paragraph 3 of the March 26, 2007 order indicates that D.M. "may issue Subpoenas and obtain all publicly filed pleadings and any documents falling within the scope of ¶ 4." *See* Order "B." Paragraph 4 (which we have redacted here to emphasize the breadth of the terms used but which is reproduced in full *supra)* in turn requires Elwyn to

> produce *any and all* reports, documents, … *and any other documents concerning or relating to sexual contact* between any residents and/or clients of Elwyn, Inc., and between residents and/or clients of Elwyn, Inc. and any employee, contractor, consultant, volunteer or other custodian … *including but not limited to all … correspondence, internal memoranda,* …. The information which must be produced pursuant to this order *includes, but is not limited to,* the kind required to be kept for all of Elwyn's clients and reported pursuant to 42 C.F.R. § 483.420…. The information shall be

produced *regardless* of whether the particular Elwyn client is considered to be a participant in an intermediate care facility, a residential treatment program or facility, a "day student" or any other classification of Elwyn, Inc. *or is categorized as a mentally retarded or mental health client* for internal, funding, or other purposes. The information to be produced shall be limited to allegations of sexual contact. This order applies to Elwyn, Inc., and each Elwyn subsidiary, program, division, and department located in Pennsylvania and New Jersey. All identifying information is to be redacted and replaced with an identifier number. Order "B," ¶ 4 (emphasis added). The emphasized language includes terms that unduly broaden the scope of the order, without sufficient countervailing language to impose appropriate protections to documents that contain, potentially, highly sensitive mental health data about non-party students. In fact, the order specifically states that information "shall" be produced regardless of whether the student is a resident or not and regardless of whether the student is considered a "mental health client," which indicates that personal mental health information may be contemplated within the scope of the order. The order does not limit, as suggested by D.M., production of documents related only to "criminal behavior," but rather includes "any and all documents concerning or relating to sexual contact. . . ." *Id.* The order is also problematic as it encompasses documents pertaining not only to sexual contact between a staff member and a student, but also between two students or between two staff members, which is irrelevant to the instant litigation. Also, as further ex-

plained below, the cursory protections in the order of limiting production to allegations of sexual contact and redacting information are inadequate. Accordingly, the discovery orders require reexamination by the trial court in light of the arguments presented by Elwyn.[4]

¶ 16 First, Elwyn argues that the trial court erred by compelling disclosure of materials that include protected health information under HIPAA. HIPAA provides for monetary fines and various terms of imprisonment for the wrongful disclosure of individually identifiable health information. 42 U.S.C. § 1320d–6. Additionally, the statute required the Secretary of Health and Human Services to promulgate privacy regulations, which are now codified at 45 C.F.R. §§ 164.500—164.534. Elwyn contends that it constitutes a "covered entity" within the meaning of HIPAA and, therefore, must comply with HIPAA and its associated regulations, because it provides behavioral and mental health services. *See* 45 C.F.R. § 164.500 ("Applicability").

¶ 17 Even if we assume for purposes of this analysis that Elwyn is a covered entity that must comply with the HIPAA privacy rule, Elwyn still fails to point to any authority, either within the HIPAA statute, its associated regulations, or case law, indicating that the HIPAA privacy protections translate into an evidentiary privilege in court cases. In fact, pursuant to our own research, we have found that other courts have rejected the notion that HIPAA creates an evidentiary privilege. *See, e.g., Northwestern Mem. Hosp. v. Ashcroft*, 362 F.3d 923, 925 (7th Cir.2004) (concluding privacy provisions of HIPAA did not cre-

4. A plain reading of the order also requires Elwyn to produce all documents relating to allegations of sexual conduct between the students themselves, *i.e.*, not involving any Elwyn employee, contractor, or volunteer, which is clearly not contemplated by this litigation. Overall, D.M.'s characterization of the order as requiring documents only of a supervisory or administrative nature is belied by the plain, broad language of the order.

ate federal evidentiary privilege). Similarly, in *Schwartz*, in examining whether there existed an evidentiary privilege under the Right–to–Know Law, our Supreme Court concluded that the purpose of the law was to make certain information available to the public and exclude certain other information; however, there was no indication that the legislature intended to create an evidentiary privilege under the statute for purposes of judicial proceedings. *Schwartz*, 729 A.2d at 553–554.

¶ 18 We note Elwyn's additional assertion that, as a covered entity under HIPAA, it "may not disclose individually identifiable health information that [it] create[s] or receive[s] unless the subject individuals authorize release." Elwyn's brief at 11. In making this representation to the Court, Elwyn apparently ignores section 164.512(e) of the privacy rule, which indicates generally (with certain caveats and requirements for disclosure pursuant to a court order or subpoena) that release of protected health information is permissible without patient authorization in judicial proceedings. 45 C.F.R. § 164.512(e). *See also U.S. v. Bek*, 493 F.3d 790, 802 (7th Cir.2007) (concluding that government's seizure of defendant-physician's patient records pursuant to court order, and subsequent admission of that information in physician's criminal trial for fraud and controlled substances' violations, did not violate HIPAA privacy protections where court's order "(1) prohibited the parties from disclosing the records outside the confines of the litigation, and (2) required that the records be returned to the covered entity or destroyed at the end of the litigation"). Although we refuse to adopt a new evidentiary privilege in Pennsylvania based on the HIPAA privacy rule, upon remand in this case, and if the trial court is satisfied that Elwyn is a covered entity for purposes of HIPAA compliance, then the trial court should consider the provisions of section 164.512(e) to ensure that its discovery orders contain appropriate safeguards.

¶ 19 Elwyn also contends that the discovery orders violate the confidentiality protections of FERPA. 20 U.S.C. § 1232g. "Congress enacted FERPA 'to assure parents of students ... access to their educational records and to protect such individuals' rights to privacy by limiting the transferability of their records without their consent.'" *Frazier v. Fairhaven Sch. Comm.*, 276 F.3d 52, 67 (1st Cir.2002) (citation omitted). Essentially, the statute effectuates these goals by not providing federal funding to educational institutions that have a "policy or practice of releasing, or providing access to, any personally identifiable information in education records other than directory information...." 20 U.S.C. § 1232g(b)(2). However, there are exceptions to this general rule where the institution obtains "written consent from the student's parents" or the "information is furnished in compliance with judicial order, or pursuant to any lawfully issued subpoena, upon condition that parents and the students are notified of all such orders or subpoenas in advance of the compliance therewith by the educational institution or agency." *Id.* at § 1232g(b)(2)(A), (B).

¶ 20 Despite the protections of FERPA, Elwyn points to no authority standing for the proposition that FERPA creates an evidentiary privilege in Pennsylvania courts. Moreover, on this record, there is no indication that the trial court considered whether Elwyn was an educational institution within the purview of FERPA or whether the records sought by D.M. are considered "education records" that require at least notice to the parent and/or student for disclosure pursuant to a court order or subpoena, as described in section

1232g(b)(2). Nevertheless, according to section 1232g(b)(2)(B), when presented with a court order or subpoena compelling disclosure of a non-party's education record, it appears to be Elwyn's responsibility to provide notice to the parent or student involved (in the absence of written consent for disclosure). As for an evidentiary privilege however, FERPA creates none.

 ¶ 21 Elwyn also contends that Pennsylvania's MHPA protects against disclosure of documents relating to the mental health treatment of Elwyn's students, employees, clients, and others. Elwyn's brief at 15. The protections of the MHPA apply as follows:

> This act establishes rights and procedures for all involuntary treatment of mentally ill persons, whether inpatient or outpatient, and for all voluntary inpatient treatment of mentally ill persons. "Inpatient treatment" shall include all treatment that requires full or part-time residence in a facility. For the purpose of this act, a "facility" means any mental health establishment, hospital, clinic, institution, center, day care center, base service unit, community mental health center, or part thereof, that provides for the diagnosis, treatment, care or rehabilitation of mentally ill persons, whether as outpatients or inpatients.

50 P.S. § 7103. The MHPA confidentiality provisions state in pertinent part as follows:

> ### § 7111. Confidentiality of records
>
> (a) All documents concerning persons in treatment shall be kept confidential and, without the person's written consent, may not be released or their contents disclosed to anyone except:
>
> (1) those engaged in providing treatment for the person;
>
> . . .

(3) a court in the course of legal proceedings authorized by this act; and . . . .

> In no event, however, shall privileged communications, whether written or oral, be disclosed to anyone without such written consent. . . . .

50 P.S. § 7111. Unlike HIPAA and FERPA, the MHPA has been interpreted in Pennsylvania to provide a "statutory privilege of confidentiality on the patient's records." *Commonwealth v. Moyer*, 407 Pa.Super. 336, 595 A.2d 1177, 1180 (1991). In *Zane v. Friends Hosp.*, 575 Pa. 236, 836 A.2d 25, 32 (2003), our Supreme Court indicated that subsection (a) of the above provision applied

> to *all* documents regarding one's treatment, not just medical records. Furthermore, the verbiage that the documents '*shall* be kept confidential' is plainly not discretionary but mandatory in this context—it is a requirement. The release of the documents is contingent upon the person's written consent and the documents may not be released '*to anyone*' without such consent.
>
> . . .
>
> The only exceptions to this prohibition is if the person at issue has given written consent to the disclosure of the documents or if the disclosure falls into one of the four exceptions to the prohibition against disclosure. . . . .

*Id.* The exception for legal proceedings only applies to those that are authorized under the act, such as proceedings for involuntary emergency treatment, *id.*, and would, therefore, not be applicable in the instant case. In *Zane*, the plaintiff sought the inpatient mental health records of her assailant but, pursuant to the broad protection to confidentiality of these records under the MHPA, the Court determined that no exceptions to confidentiality applied and that the underlying trial court

order compelling disclosure was "clearly erroneous." *Id.* at 33. The *Zane* court also noted that the MHPA "governs the provision of inpatient psychiatric treatment and involuntary outpatient treatment." *Id.* However, in *Zane,* it was clear that the order at issue improperly compelled the release of inpatient psychiatric records from a facility that fell within the purview of the MHPA.

▮▮▮ ¶ 22 In the instant case, it is not clear from the record, nor does it appear that the trial court contemplated, whether Elwyn meets the definition of a "facility" under the MHPA. *See* 50 P.S. § 7103. However, if upon remand, the trial court determines that the materials sought in discovery are "documents regarding one's treatment" and that Elwyn is a "facility" under the MHPA, then the court must make appropriate adjustments to the breadth of its discovery orders. *See, e.g., Gocial v. Independence Blue Cross,* 827 A.2d 1216, 1223 (Pa.Super.2003) (concluding that, in light of the record as it existed on appeal, remand was necessary for the trial court to review discovery requests in light of privileges raised by the plaintiff and that "[i]n some instances, *in camera* review may be required").

▮▮▮ ¶ 23 Next, Elwyn claims that the discovery order encompasses documents protected by the attorney-client privilege and the attorney work product doctrine. The attorney-client privilege is codified in Pennsylvania as follows:

> In a civil matter counsel shall not be competent or permitted to testify to confidential communications made to him by his client, nor shall the client be compelled to disclose the same, unless in either case this privilege is waived upon the trial by the client.

42 Pa.C.S. § 5928. As noted in *Gocial:*

> The attorney-client privilege exists to foster a confidence between attorney

and client that will lead to a trusting and open dialogue. While the attorney-client privilege is statutorily mandated, it has a number of requirements that must be satisfied in order to trigger its protections. First and foremost is the rule that the privilege applies only to confidential communications made by the client to the attorney in connection with providing legal services.

*Gocial,* 827 A.2d at 1222 (citation and quotation marks omitted). The attorney work product doctrine provides, essentially, that "discovery shall not include disclosure of the mental impressions of a party's attorney or his or her conclusions, opinions, memoranda, notes or summaries, legal research or legal theories." Pa.R.C.P. 4003.3. Additionally:

> The underlying purpose of the work-product doctrine is to shield the mental processes of an attorney, providing a privileged area within which he can analyze and prepare his client's case. The doctrine promotes the adversary system by enabling attorneys to prepare cases without fear that their work product will be used against their clients. However, the work-product privilege is not absolute and items may be deemed discoverable if the "product" sought becomes a relevant issue in the action.

*Gocial,* 827 A.2d at 1222 (citations and quotation marks omitted). Instantly, Elwyn merely argues that the broadly-worded discovery orders do not provide "for the exclusion of documents or portions thereof that might be subject to the attorney-client privilege or the work product doctrine." However, it is impossible for this Court to determine whether any privilege applies when Elwyn has failed to identify or describe any such documents that may be protected. Thus, we conclude, as we did in *Gocial,* that

we cannot determine on the record before us whether and to what extent any of the privileges ... apply here.... [T]he trial court did not rule on the relevance of each item [on the privilege log that existed in *Gocial* ] or explain why the privileges raised were inapplicable. Rather, the court simply deemed the entire log discoverable. We believe this was error.

In light of the record, we conclude that a remand is necessary so that the trial court may issue a ruling with respect to each document actually sought by the defendants. In some instances, *in camera* review may be required.

*Id.* at 1223. In the instant case, we do not even have a situation where there is a privilege log, let alone any indication or analysis on the part of the trial court with regard to documents that Elwyn deemed protected by the attorney-client privilege and work product doctrine. We remind Elwyn that, as the party invoking these privileges, it must initially "set forth facts showing that the privilege has been properly invoked; then the burden shifts to the party seeking disclosure to set forth facts showing that disclosure will not violate the attorney-client privilege, e.g., because the privilege has been waived or because some exception applies." *Nationwide Mut. Ins. Co. v. Fleming,* 924 A.2d 1259, 1266 (Pa.Super.2007) (citations omitted). Accordingly, "[i]f the party asserting the privilege does not produce sufficient facts to show that the privilege was properly invoked, then the burden never shifts to the other party, and the communication is not protected under attorney-client privilege." *Id.* at 1267. If, upon remand, Elwyn is able to identify certain materials encompassed in the discovery request that are subject to the attorney-client privilege or work product doctrine, then the trial court will be able to assess whether those materials are discoverable. We therefore remand, noting that the court may conduct *in camera* review of documents identified by Elwyn to be subject to a privilege, to better analyze the privilege issues, as needed.

¶ 24 Finally, Elwyn asserts an evidentiary privilege in its personnel files but has not provided us with any precedential authority that such a privilege exists in Pennsylvania. Accordingly, Elwyn's final argument in this regard is without merit.

¶ 25 For the foregoing reasons, we vacate the March 23, 2007 discovery orders and remand to the trial court with instructions contained in this opinion.

¶ 26 Orders vacated. Case remanded. Jurisdiction relinquished.

¶ 27 Judge Colville files a concurring statement.

## CONCURRING STATEMENT BY COLVILLE, J.:

¶ 1 I join the Majority's well-reasoned and persuasive Opinion. I write separately to express concerns I have with manner in which Appellants sought to appeal from two non-final orders.

¶ 2 On March 26, 2007, the trial court filed two orders, Orders A and B. On March 28, 2007, Appellants filed a notice of appeal in which they gave notice that they were appealing Order B. On April 12, 2007, Appellants filed a motion for reconsideration and/or appellate certification of Order A. Then, on April 16, 2007, Appellants filed another notice of appeal in which they gave notice that they were appealing Order A. On April 20, 2007, they filed a motion for reconsideration and/or appellate certification of Order B.

¶ 3 The trial court never ruled on the requests for appellate certification. According to Appellants, pursuant to Pa. R.A.P. 1311(b), their requests were

deemed denied upon the expiration of thirty days, thus causing Appellants to file petitions for review in this Court.[5] Noticeably absent from Appellants' petitions for review is any reference to the fact that they had filed notices of appeal from the same orders that they then sought to have this Court review under its discretionary authority. In any event, this Court denied Appellants' petitions for review.

¶ 4 The orders that Appellants seek to appeal are not final and appealable pursuant to Pa.R.A.P. 341, nor are they appealable as of right pursuant to Pa.R.A.P. 311. Appellants' current position is that the orders are collateral orders appealable as of right under Pa.R.A.P. 313. Such a position contradicts the stance Appellants took in their petitions for review. *See, e.g.,* Appellants' Petition for Review, 6/19/07, at 4 ("Unless this Court grants discretionary review, [Appellants] will be required to comply with the Order of March 2[6], 2007....."). Appellee contends that, because this Court denied Appellants' petitions for review, Appellants are precluded from seeking to appeal the orders in question pursuant to Pa.R.A.P. 313.

¶ 5 In response to Appellee's preclusion argument, Appellants insist they acted appropriately by simultaneously filing notices of appeal and seeking discretionary review of Orders A and B. The backbone of Appellants' argument in this regard is as follows:

> ... [Appellants] had two options to challenge the March 23rd Orders. The proper practice is to utilize both options because, in the event one is denied, the other remains viable. As explained in the "Bible" of Pennsylvania appellate practice:

> > To the extent that it is not clear that a particular order is appealable as a matter of right as a collateral order, counsel has the choice of either filing a notice of appeal on the assumption that it is a collateral order, or pursuing an interlocutory appeal by permission, on the assumption that the requirements of a collateral order will not be found. **In such cases, the cautious practice is to pursue both options.** That is because if only a petition for permission to appeal is filed, and it ultimately is determined that the order is a collateral order and that a notice of appeal is the correct procedure, the filing of the petition for permission to appeal will be deeded insufficient, and the right to an immediate appeal will be lost.

> > Similarly, even though an order may be appealable as a collateral order, if the appellant treats the order as interlocutory and appealable under Rule 1311 or Rule 341(c), an appeal may be quashed if the appellant fails to follow the procedures prescribed for securing interlocutory review.

> > See Darlington et al., *Pennsylvania Appellate Practice 2d,* § 313:3 (2004 Supp.) (citations omitted; emphasis added).

Appellants' Reply Brief at 3.

¶ 6 Appellants' argument fails to take into account that, on December 8, 2004, our Supreme Court adopted Pennsylvania Rule of Appellate Procedure 1316, which became effective on February 7, 2005.[6] In

---

**5.** The parties do not provide any advocacy concerning the effect the filing of Appellants' notices of appeal had on the trial court's ability to amend the March 26th orders to comport with 42 Pa.C.S.A. § 702(b). *See* Pa. R.A.P. 1701(a) ("Except as otherwise pre-

scribed by these rules, after an appeal is taken or review of a quasijudicial order is sought, the trial court or other government unit may no longer proceed further in the matter.").

**6.** Rule 1316 provides:

fact, since the adoption of Pa.R.A.P. 1316, Pennsylvania Appellate Practice now states:

To the extent that it is not clear that a particular order is appealable as a matter of right as a collateral order, counsel has the choice of either filing a notice of appeal (or a petition for review) on the assumption that it is a collateral order, or pursuing an interlocutory appeal by permission, on the assumption that the requirements of a collateral order will not be found. **In such cases, counsel should not appeal but instead should seek interlocutory review by permission pursuant to Pa.R.A.P. 1311.** If upon review of a petition for permission to appeal or a petition for review from the trial

(b) Additional requirements. The appellate court may require any additional actions necessary to perfect the appeal. court's refusal to amend its order to permit the filing of a petition for permission to appeal, the appellate court concludes that the order is appealable as of right as a collateral order, it will treat a timely filed petition for discretionary review as a timely notice of appeal or petition for review, pursuant to Pa.R.A.P. 1316. On the other hand, if only a notice of appeal is filed and it is ultimately decided that a petition for permission to appeal is the correct procedure, the time will have passed to pursue an interlocutory appeal by permission. An application for amendment of an interlocutory order to include the language specified in 42 Pa.C.S. § 702(b) of the Judicial Code must be filed with the lower court or government unit within 30 days after the entry of the interlocutory order in question.

Where the interlocutory appeal process is initiated, counsel should follow the procedures faithfully, and not intermingle them with procedures governing appeals as of right. **The "safe harbor" provisions of Pa.R.A.P. 1316 guarantee that even if an order is appealable as of right by notice of appeal, a petition for permission to appeal or a petition for review from the trial court's refusal to amend its order, would be treated as a notice of appeal.**

**In seeking trial court certification and appellate permission to appeal, counsel should, in addition to arguments in support of permission to appeal, make the case for an appeal as of right.**

G. Ronald Darlington *et al.*, Pennsylvania Appellate Practice § 313:3 (2006 ed.) (footnotes omitted and emphasis added).

¶ 7 The Majority correctly points out that nothing in Rule 1316 precludes the filing of both a collateral appeal and a petition for review. However, judicial economy is not served by allowing parties to utilize two separate tracks to argue for the immediate appeal of non-final orders. In my view, if parties, such as Appellants, wish to argue, on the one hand, that an order is appealable as of right and, on the other hand, that an order is appealable under this Court's discretionary authority, then, in order to consolidate this Court's

(a) General rule. The appellate court shall treat a request for discretionary review of an order which is immediately appealable as a notice of appeal under the following circumstances:
(1) where a party has filed a timely petition for permission to appeal pursuant to Pa. R.A.P. 1311; or

(2) where a party has filed a timely petition for review from a trial court's refusal of a timely application pursuant to Pa.R.A.P. 1311 to amend the order to set forth expressly the statement specified in 42 Pa.C.S. § 702(b).

Pa.R.A.P. 1316.

efforts, both of these arguments should be presented in a petition for review. Rule 1316 allows for this consolidation. *See* Pa. R.A.P. 1316(a) ("The appellate court shall treat a request for discretionary review of an order which is immediately appealable as a notice of appeal. . . .").