## Southeastern Pennsylvania Trans. Authority v. Philadelphia Transit Consultants

*Thomas S. Biemer,* for plaintiff.

*Bruce D. Lombardo, Richard T. Abell* and *Michael J. Hook*, for defendant.

BERNSTEIN, *J.*, January 19, 2011—Before the court defendant has appealed from the discovery order of December 6, 2010. This order reads:

And now, the 6th day of December, 2010, upon consideration of plaintiffs southeastern transportation authorities motion to compel depositions answers, and any response thereto, it is hereby ordered that the motion is granted as follows:

1. Defendant Philadelphia Transit Consultants abused the work product doctrine during the deposition of Leonard Rattigan by invoking the work product doctrine improperly and instructing the witness not to answer certain questions;

2. Defendant Philadelphia Transit Consultants is hereby ordered to reproduce Leonard Rattigan within (10) days of the date of this order to answer all questions for which Mr. Rattigan was previously directed improperly not to answer on the basis of the work product doctrine;

3. Defendant Philadelphia Transit Consultants abused the work product doctrine during the deposition of Thomas Farrell by invoking the work product doctrine improperly and instructing the witness not to answer certain questions;

4. Defendant Philadelphia Transit Consultants is hereby ordered to reproduce Thomas Farrell within (10) days of the date of this order to answer all questions for which Mr. Farrell was previously directed improperly not to answer on the basis of the work product doctrine.

This is a dispute between SEPTA and defendants over the design and construction services provided by defendants for an elevated rail structure. According to the complaint, PTC provided design and engineering support and other professional services in connection with the project.

Pursuant to a consultant contract for construction management services dated January 7, 1997, defendant provided construction management and other services for SEPTA. When SEPTA discovered severe cracking and spalling of concrete on portions of the installed precast concrete deck panels, (the haunch claims) SEPTA initiated litigation. SEPTA and the defendants entered into a settlement agreement whereby defendants agreed to make the needed repairs. Nonetheless, after repairs, portions of the elevated railroad continued to fall and defendants left the project, allegedly breaching their obligations under their settlement agreement. Oversight of the construction performed by several companies had been the responsibility of a "joint board of control." A Mr. Rattigan and a Mr. Farrell were both active participants in that board of control.

In 2004 SEPTA filed a second lawsuit. That litigation was withdrawn after the parties entered into a tolling and standstill agreement to permit further investigation. The present litigation is the resumption of the 2004 litigation.

Plaintiff SEPTA noticed for deposition Mr. Leonard Rattigan individually and asked for designation of a corporate designee. Pursuant to the notice of deposition, PTC designated Mr. Rattigan as their corporate representative concerning "PTC's responsibilities pursuant to the settlement release and indemnity agreement dated June 26, 2000, including but not limited to those as described by PTC in their answer to the complaint."

Mr. Rattigan is an engineer who currently works for defendant BP Americas, Inc. He had been a member of the supervisory "joint board of control." At deposition Mr. Rattigan was asked to describe factual observations and his personal professional conclusions as to the causes of the falling concrete at the project. Counsel for PTC directed the witness not to answer questions.

For example, counsel for movant asked:

"During any of your discussions, this is still in 1999, you were getting up to speed on the haunch claim, did you have discussions regarding the proposed cause of the haunch distress?"

Opposing counsel objected, claiming that it was asking about "value or merits of the claims and therefore is protected work product." In argument at the bar of the court during the discovery hearing, counsel for defendant acknowledged that this witness had no discussions whatsoever with counsel, and acknowledged that all his information came from discussions with the board. It is these discussions with the board that counsel claims

are protected by some barely articulated "work product privilege."

When asked how discussions with non-lawyer individuals or other board members could possibly be protected by the attorney work product privilege, counsel for defendant said: "Your honor we are not applying the attorney work product." When the court asked what other work product privilege was involved counsel said: "It's the company representative work product protection."

Apparently, counsel seeks to claim that Pa.R.Civ. P. 4003.3 precludes any questions about any internal discussions as to the substantive cause of the haunch problems. Internal substantive discussions relevant to issues presented in this case are not protected. It is absurd to claim a corporate designee may refuse to answer questions as to corporate knowledge because it was the topic of internal technical and substantive discussions which did not involve counsel.

The specific proposition being advanced by this appeal is that internal discussions about the factual cause of the haunch problem can remain hidden. Appellant claims that factual conclusions, factual statements, factual opinions, and theories expressed in internal discussions by professionals not involving attorneys are not discoverable. This proposition is wrong.

Discussing what caused the haunch distress is not a value of a claim. It's a factual conclusion. It's a scientific conclusion. It's an expert conclusion and discoverable. Likewise, discoverable is the answer to the next proper question, namely "is that your own professional conclusion or what somebody told you?" Likewise, discoverable is the answer to the next proper question, namely "who told you?" That answer may reveal an entire army of experts

who have been telling PTC for decades that they had a problem. This investigation by competent professionals would be the only responsible corporate response to a complaint or problem and is totally discoverable.

The witness Rittigan was also specifically asked:

"During any of your discussions, this still in 1999, when you were getting up to speed on the haunch claim, did you have discussions regarding the proposed cause of the haunch distress?"

The witness was asked:

"Mr. Rattigan during the time you worked on the haunch distress issue, 1999, 2000, 2001, 2002, was there a time where you had discussions regarding what PTC or the entities that comprise PTC believed was the cause of the haunch distress?"

The witness was improperly directed not to answer these questions.

Even though these questions asks only whether or not any discussions occurred and do not yet ask for any substance, counsel for defendant refused to permit Mr. Rattigan to testify. By this incredibly broad interpretation of an unarticulated "internal discussion" privilege which has never been accepted in Pennsylvania jurisprudence, counsel seeks to hide everything the company or any of the individuals involved in decisionmaking knew about the problem in 1999, 2000, 2001, or 2002.

The deposition of Mr. Thomas Farrell was equally obstructed. Mr. Farrell was a vice-president at Parsons, Brinckerhoff Construction Services, Inc. Questions concerning his factual knowledge, observations, and conclusions as a construction professional were objected

to and he was directed not to answer. For example, Mr. Farrell was asked:

Q.: Did you look at any design documents to determine what was causing the haunch problems?

A.: No.

Q.: Did you talk to anybody about was causing this problem?

Counsel for defendant objected:

"To the extent it calls for mental impressions, conversations, opinions during the litigation, I am instructing you not to answer. That is work product and it is protected."

Mr. Farrell's was asked:

"Did you ever come to a conclusion as to this is you personally -- did you ever come to a conclusion based on your work on a resolution as to what caused the haunch or distress?"

The question was specifically directed to his own personal conclusions about the factual cause of the haunch problem. The question asks nothing about the value or merit of any claim. Nonetheless, counsel for defendant again objected and directed him to not answer the question. This is improper.

Counsel has taken the position that anything factual, or opinion, whether its source is personal knowledge, internal corporate expertise or external expertise which in any way touches on any factual determination or factual observations about the cause of the problem is not discoverable. They seek to preclude discovery of any

knowledge gained by expert opinion either provided by the experts who did the construction or the repair or outside evaluative experts.[1]

Defense counsel even objected to questions of board level discussions about "bolt tightening." Counsel also objected to the question: "Was there any consideration given to any other causes besides the bolt over tightening as contributing to the haunch problem?"

Protection from discovery does not, to any extent, protect any firsthand knowledge or observations, does not protect any firsthand conclusions of an individual having personal knowledge and it certainly cannot protect a designated corporate representative presented to testify on behalf of a corporation as to corporate knowledge. Neither can it possibly protect factual or business discussions with experts not specially retained in this litigation or other professionals who have opined on the causes of the failure.

This rule does not protect evidentiary facts or communications. It protects only internal conclusions as to strategy, tactics, and value of this claim. The statements of non-attorney professionals employed by defendants, not their attorneys, analyzing a technical problem over decades for the purpose of solving a problem are admissible in evidence and perforce discoverable. Indeed, when testified to by a corporate designee they are perhaps not only discoverable but may even be binding on the defendant. Plaintiff herein seeks purely factual information regarding the cause of the haunch distress.[2]

---

1. Apparently, there was no determination whether there was a germ of protected material within the factual question being asked since the direction not to answer was made to questions asking only about whether any conversation had even occurred.

2. See *TM v. Elwyn, Inc.,* 950 A.2d 1050 (Pa. Super. 2008).

Clearly without question the factual questions asked of these witnesses, especially of the corporate designee who was being questioned as the company representative can be answered without any reference to any opinions concerning the value or merits of this claim. Factual conclusions and factual information, and expert opinion not produced for litigation. All of which is entirely discoverable. This style of deposition objection should have disappeared with adoption of the first discovery rules.[3]

Further, it is the burden on the party seeking privilege protection to prevail and demonstrate privilege. No such demonstration whatsoever has been made.

"However the work product privilege is not absolute and items may be deemed discoverable if the product sought becomes a relevant issue in the case."

3. One is reminded of Jim Carey's Rule of Evidence 403 objection in "Liar Liar." When asked for a basis of objection he responded: "Because it is devastating to my case."