J-A07040-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| EQT PRODUCTION COMPANY | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| ROBERT M. BOCHTER, II; MATTHEW PASQUINELLI; VENTURE ENERGY SOLUTIONS, LLC; AND CONFLUENCE ENERGY CONSULTANTS, LLC | |
| Appellee | No. 1405 WDA 2014 |

Appeal from the Order Entered August 4, 2014
In the Court of Common Pleas of Allegheny  County
Civil Division at No(s): 11-005691

BEFORE:  BENDER, P.J.E., LAZARUS, J., and MUNDY, J.

MEMORANDUM BY MUNDY, J.:                           **FILED JULY 24, 2015**

Appellant, EQT Production Company (EQT), appeals from the August 4, 2014 order denying its motion for preliminary injunctive relief, seeking to enjoin Appellees Robert M. Bochter, II, Matthew Pasquinelli, Venture Energy Solutions, LLC, and Confluence Energy Consultants, LLC (collectively, Appellees) from competing with EQT for two years, and to create a constructive trust relative to certain disputed proceeds, among other relief. After careful review, we affirm in part, reverse in part and remand.

The trial court aptly summarized the factual history of this case as follows.

> [] EQT is a large and well-established corporation engaged in natural gas production.  As a

necessary part of this business, EQT engages in the lease and, occasionally, purchase of mineral rights for exploration and development. The primary face of the company in these efforts, when dealing with landowners, are EQT's landmen.

In 2014[,] Defendants Robert M. Bochter and Matthew Pasquinelli[,] were among those landmen. They were, to all appearances, successful and well-compensated employees of EQT. In January of that year, along with another partner not party to this action, they formed two companies, Venture Energy Solutions, LLC (Venture) and Confluence Energy Consultants, LLC (Confluence). At least one of these, like EQT, was in the business of acquiring mineral rights. Bochter and Pasquinelli continued their employment with EQT notwithstanding their new status as competitors.

Soon after, [Bochter and Pasquinelli], through Venture, entered into a deal to acquire an option to purchase mineral rights from Carl and Alice Hildreth (the Hildreth deal). They used EQT's Geographic Information System (GIS), a tool owned by EQT and used by their landmen to organize both public and proprietary information for use in acquiring mineral rights. [Bochter and Pasquinelli] also saved spreadsheets of public information produced using the GIS to a Google Drive. The evidence does not indicate that they also extracted and retained proprietary information from the GIS, although Bochter admitted to looking at non-public EQT information regarding the Hildreth property. Venture quickly resold the option to purchase, making a significant profit. Bochter and Pasquinelli were thereafter suspended then fired by EQT.

Venture also engaged in a transaction for mineral rights with Charles and Eileen Schilling, but this deal was not established by evidence to be related in any way to proprietary EQT information.

EQT is now seeking monetary damages for Bochter and Pasquinelli's actions. In advance of its

> damage case, EQT is seeking Preliminary Injunctive relief from th[e trial c]ourt, demanding that [Appellees] be enjoined from doing business in particular geographic areas and that a constructive trust be established to hold the proceeds of the Hildreth deal.

Trial Court Opinion, 10/23/14, at 3-4 (footnote omitted).

On April 1, 2014, EQT filed a complaint against Appellees seeking damages and equitable relief for violation of the Pennsylvania Uniform Trade Secrets Act,[1] tortious interference with contract and prospective business relations, tortious interference with prospective economic advantage, breach of fiduciary duty/duty of loyalty, civil conspiracy, conversion, unjust enrichment, and unfair competition. Contemporaneously with its complaint, EQT filed a motion for an order to preserve documents, an order for expedited discovery, and a motion for a special preliminary injunction. On April 8, 2014, the trial court granted EQT's motion for an order to preserve documents, and separately ordered the parties to agree to a discovery schedule. On April 15, 2014, EQT filed a renewed motion for a special preliminary injunction. Following motions to compel certain discovery, EQT filed a motion for adverse inferences based on Appellees' lack of compliance with discovery requests and orders. A hearing on EQT's renewed motion for preliminary injunction was held on June 5, 6, 10, and 16, 2014. On August 4, 2014, the trial court denied EQT's renewed motion for adverse inferences

_____

[1] 12 Pa.C.S.A. §§ 5301-5308.

and its motion for preliminary injunction. EQT filed a timely notice of appeal on August 28, 2014.[2]

On appeal, EQT raises the following issues for our review.

> [1]: Did the trial court err in entering an [o]rder denying [EQT'S] motion for adverse inferences, when adverse inferences are warranted because [Appellees] spoliated evidence, withheld or failed to produce evidence, and violated court orders regarding preserving and producing evidence?
>
> [2]: Did the trial court err in entering an [o]rder denying [EQT'S] motion for a preliminary injunction without considering whether a stolen compilation of information was a trade secret?
>
> [3]: Did the trial court err in entering an [o]rder denying [EQT'S] motion for a preliminary injunction imposing a constructive trust on all revenues that [Appellees] received improperly, when an injunction is necessary to preserve the *status quo* by preventing [Appellees] from depleting the improperly received revenues?
>
> [4]: Did the trial court err in entering an [o]rder denying [EQT'S] motion for a preliminary injunction without addressing [EQT'S] other requests for relief—enjoining [Appellees] from continuing to possess or use EQT's property, requiring [Appellees] to immediately return EQT's property, and requiring [Appellees] to provide an accounting of revenues received improperly—when these forms of relief were appropriately raised before the trial court?

EQT's Brief at 3-4.

_____

[2] EQT and the trial court have complied with Pennsylvania Rule of Appellate Procedure 1925.

EQT's first allegation of error faults the trial court for denying its motion for adverse inferences due to Appellees' discovery violations and spoliation of evidence, and failing to apply those inferences in its determination of EQT's motion for a preliminary injunction. *Id.* at 30. Before addressing the merits of EQT's claim, we note the following principles guiding our review.

> "Spoliation of evidence" is the failure to preserve or the significant alteration of evidence for pending or future litigation. ***Pyeritz v. Commonwealth***, 613 Pa. 80, 32 A.3d 687, 692 (2011). "When a party to a suit has been charged with spoliating evidence in that suit (sometimes called "first-party spoliation"), we have allowed trial courts to exercise their discretion to impose a range of sanctions against the spoliator." ***Id.*** (citing ***Schroeder v. Commonwealth, Department of Transportation***, 551 Pa. 243, 710 A.2d 23, 27 (1998)) (footnotes omitted). This Court has stated:
>
> > "When reviewing a court's decision to grant or deny a spoliation sanction, we must determine whether the court abused its discretion." ***Mount Olivet Tabernacle Church v. Edwin L. Wiegand Division***, 781 A.2d 1263, 1269 (Pa. Super. 2001) (citing ***Croydon Plastics Co. v. Lower Bucks Cooling & Heating***, 698 A.2d 625, 629 (Pa. Super. 1997) (recognizing that "[t]he decision whether to sanction a party, and if so the severity of such sanction, is vested in the sound discretion of the trial court")). Such sanctions arise out of "the common sense observation that a party who has notice that evidence is relevant to litigation and who proceeds to destroy evidence is more likely to have been threatened by that evidence than is a party in the same position who does not destroy the evidence." ***Mount Olivet***, 781 A.2d at 1269 (quoting ***Nation–***

> ***Wide Check Corp. v. Forest Hills Distributors, Inc.***, 692 F.2d 214, 218 (1st Cir. 1982)). Our courts have recognized accordingly that one potential remedy for the loss or destruction of evidence by the party controlling it is to allow the jury to apply its common sense and draw an "adverse inference" against that party. ***See Schroeder v. Commonwealth of Pa., Dep't of Transp.***, 551 Pa. 243, 710 A.2d 23, 28 (1998). …
>
> To determine the appropriate sanction for spoliation, the trial court must weigh three factors:
>
> > (1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party and, where the offending party is seriously at fault, will serve to deter such conduct by others in the future.
>
> ***Mount Olivet***, 781 A.2d at 1269–70 (quoting ***Schmid v. Milwaukee Elec. Tool Corp.***, 13 F.3d 76, 79 (3d Cir.1994)). …
>
> ***Creazzo v. Medtronic, Inc.***, 903 A.2d 24, 28–29 (Pa. Super. 2006).

***Parr v. Ford Motor Co.***, 109 A.3d 682, 701-702 (Pa. Super. 2014) (*en banc*) (footnote omitted), *appeal denied*, --- A.3d ---, 2015 WL --------, No. 46 EAL 2015 (Pa. 2015) (*per curiam*).

> Evidentiary rulings are committed to the sound discretion of the trial court, and will not be overruled absent an abuse of discretion or error of law. In order to find that the trial court's evidentiary rulings constituted reversible error, such rulings must not only have been erroneous but must also have been

harmful to the complaining party. Appellant must therefore show error in the evidentiary ruling and resulting prejudice, thus constituting an abuse of discretion by the lower court.

***Whitaker v. Frankford Hosp. of City of Phila.***, 984 A.2d 512, 521-522 (Pa. Super. 2009) (internal quotation marks and citations omitted).

EQT specifically challenges the trial court's determination that it did not prove spoliation occurred. EQT's Brief at 31-33. "The trial court denied EQT's motion for adverse inferences because it inexplicably held that EQT did not demonstrate spoliation of evidence. The court never explained how it arrived at that conclusion and it is impossible to see how it could have." *Id.* at 31. EQT recounts the evidence of Appellees' non-compliance with the trial court's discovery orders and testimony tending to establish that Appellees deleted information from computers that were provided. *Id.* EQT concludes "[t]he deletion of computer files is undeniably spoliation of evidence for which an adverse inference should be granted. … The trial court's failure to acknowledge these admitted deletions as spoliation is reversible error." *Id.* at 32-33.[3]

_____

[3] Implicit in EQT's argument is the contention the trial court should have determined that discovery was complete for the purposes of its preliminary injunction motion so that Appellees' alleged violations of discovery orders could lead to the conclusion of spoliation of the evidence and to the imposition of sanctions. It is apparent the trial court declined to do so. In its October 23, 2014 opinion, the trial court noted that the underlying case was in its "early stages," and discovery was an "ongoing process". Trial Court Opinion, 10/23/14, at 5. The trial court offered EQT additional time to seek compliance of the discovery orders. *Id.* "[EQT] presented two Motions
*(Footnote Continued Next Page)*

The trial court found, however, that EQT did not establish that spoliation in fact occurred. Trial Court Opinion, 10/23/14, at 6.

> The essential argument of [EQT] in its Motion for Adverse Inference seems to be that [Appellees] must have spoliated evidence because [EQT] failed to find the proprietary information it expected to appear upon discovery, or that the [Appellees] had not thus far in the early stages of this litigation fully produced all information requested by [EQT]. This is not, and cannot be, sufficient for an adverse inference.

*Id.* at 5. Based on our review of the record, we conclude the trial court's factual findings in this regard are supported and its evidentiary ruling in refusing to accept adverse inferences at this stage of the proceedings was not an abuse of its discretion.

EQT's remaining issues on appeal contain various allegations of trial court error in denying its motion for preliminary injunction. We recount the

_____
*(Footnote Continued)*

to Compel discovery in advance of the hearing on their Motion for Preliminary Injunction. EQT was offered an opportunity by this [c]ourt to delay the hearing until its discovery requests had been fully answered. It chose to go forward without [Appellees'] full compliance." *Id.*

"[I]n general, discovery orders are not final, and are therefore unappealable." *T.M. v. Elwyn, Inc.*, 950 A.2d 1050, 1056 (Pa. Super. 2008), *quoting* *Jones v. Faust*, 852 A.2d 1201, 1203 (Pa. Super. 2004). "Discovery sanction orders are interlocutory and not appealable until final judgment in the underlying action." *Baranowski v. Am. Multi-Cinema, Inc.*, 688 A.2d 207, 208 n.1 (Pa. Super. 1997) (citation omitted), *appeal denied*, 704 A.2d 633 (Pa. 1997). Accordingly, to the extent EQT challenges the trial court's underlying discovery and sanction orders, as opposed to the trial court's evidentiary decisions based on the then current status of discovery at the preliminary injunction hearing, we are without jurisdiction to address such claims. *Id.*; *see also* Pa.R.A.P 311, 341.

following principles directing our review of these issues. "[T]he scope of review in preliminary injunction matters is plenary." ***Warehime v. Warehime***, 860 A.2d 41, 46 n.7 (Pa. 2004)

> [O]ur review of a trial court's order granting or denying preliminary injunctive relief is highly deferential. This highly deferential standard of review states that in reviewing the grant or denial of a preliminary injunction, an appellate court is directed to examine the record to determine if there were any apparently reasonable grounds for the action of the court below. We will find that a trial court had apparently reasonable grounds for its denial of injunctive relief where the trial court has properly found that any one of the following essential prerequisites for a preliminary injunction is not satisfied.
>
> There are six essential prerequisites that a party must establish prior to obtaining preliminary injunctive relief. The party must show: 1) that the injunction is necessary to prevent immediate and irreparable harm that cannot be adequately compensated by damages; 2) that greater injury would result from refusing an injunction than from granting it, and, concomitantly, that issuance of an injunction will not substantially harm other interested parties in the proceedings; 3) that a preliminary injunction will properly restore the parties to their status as it existed immediately prior to the alleged wrongful conduct; 4) that the activity it seeks to restrain is actionable, that its right to relief is clear, and that the wrong is manifest, or, in other words, must show that it is likely to prevail on the merits; 5) that the injunction it seeks is reasonably suited to abate the offending activity; and, 6) that a preliminary injunction will not adversely affect the public interest. The burden is on the party who requested preliminary injunctive relief[].

*Id.* at 46-47 (internal quotation marks, citations and footnotes omitted).

"We may interfere with the chancellor's decision only if the certified record reveals that no grounds exist to support the decree, or that the rule of law upon which the court relied was palpably erroneous or misapplied." ***W. Penn Specialty MSO, Inc. v. Nolan***, 737 A.2d 295, 298 (Pa. Super. 1999) (citation omitted).

EQT first claims the trial court erred in failing to determine if the public information component of its GIS compilation, obtained and used by Appellees, qualified as a trade secret. EQT's Brief at 41. "The trial court [] erred by not analyzing whether EQT's GIS compilation is entitled to trade secret protection." *Id.* EQT argues that compilations of public information are included in the definition of trade secrets under common law and the Pennsylvania Uniform Trade Secrets Act. *Id.* at 42-43, *citing* 12 Pa.C.S.A. § 5302. EQT then develops an argument for why trade secret status applies to the GIS compilation in this case. *Id.* at 43-49. We conclude this argument misses the point of the trial court's ruling.

The trial court in fact allowed for the possibility that the GIS compilation deserved trade secret protection. "[The trial court does] not doubt that the GIS is a valuable tool for EQT, or that it, used as a tool for the manipulation of data to achieve particular ends, is worthy of protection as a trade secret." Trial Court Opinion, 10/23/14, at 7. However, the trial court determined that this fact did not excuse the lack of an evidentiary

- 10 -

showing that Appellees continued to possess or have access to the GIS tool.

***Id.***

> Without access to [the GIS], and without any evidence that they retain any other proprietary information which belongs to EQT, as distinguished from public information also manipulable by the GIS, there is no indication that any further harm will ensue from their continued business operation, apart from the simple fact of competition, from which EQT has no protection.

***Id.*** Consequently, the trial court determined that the sixth prerequisite enumerated by ***Warehime*** was not established. "The offending activity here is in the past. [Appellees] have no access to EQT's GIS database, and thus no ability, even if inclination, to repeat it. Estopping their future business dealings will not change this, for good or ill…." ***Id.***

Upon review of the record, we conclude the findings of the trial court are supported. Absent EQT's sought-after adverse inferences, the trial court was within its discretion as evaluator of credibility and finder of fact to conclude the evidence of Appellees' continued ability to use proprietary information was lacking. Accordingly, we conclude the trial court had "apparently reasonable grounds" for its decision to deny preliminary injunctive relief. ***See Warehime***, ***supra***.

EQT next faults the trial court for failing to grant the portion of its preliminary injunction motion seeking to impose a temporary constructive

trust on Appellees, relative to the proceeds from the Hildreth deal.[4]  EQT's

Brief at 50.  Specifically, EQT argues, "[t]he [trial] court expressly

---

[4] We recognize that it may not be appropriate to use the term "constructive trust" by a party seeking the temporary freezing or sequestering of assets as a form of preliminary injunctive relief.

> A constructive trust arises when a person holding title to property is subject to an equitable **duty to convey it to another** on the ground he would be unjustly enriched if he were permitted to retain it.  …  The controlling factor in determining whether a constructive trust should be imposed is whether it is necessary to prevent unjust enrichment.

*Santoro v. Morse*, 781 A.2d 1220, 1231 (Pa. Super. 2001) (citations omitted, emphasis added).  Thus, a constructive trust is a final equitable remedy, because preliminary limitations on an asset would **not** require its conveyance to another.  Based on this understanding, this Court has held that a trial court's grant of a constructive trust, purportedly as a preliminary injunction, was in fact a final order.  *Robbins v. Kristofic*, 643 A.2d 1079, 1082 (Pa. Super. 1994), *appeal denied*, 651 A.2d 541 (Pa. 1994).  In *Robbins*, the trial court entered an order as follows.  "[I]t is hereby ORDERED that a preliminary injunction issue requiring that [the holder of a fund in Defendant's name] be imposed with a constructive trust in favor of Plaintiff and may not be withdrawn without further order of court."  *Id.* at 1081-1082.  In rejecting the appellant's challenge to the trial court's grant of the preliminary injunction, this Court held that the trial court's imposition of the constructive trust was a final order granting a permanent remedy upon a determination of the merits, rendering the preliminary injunction portion of the trial court's order moot.  *Id.* at 1082.  Notwithstanding *Robbins*, this Court in *Santoro* upheld "the trial court in the exercise of its broad equity powers [to] order the **temporary imposition of a constructive trust** so as to preserve the assets of [Defendant,] pending trial."  *Santoro*, *supra* at 1231 (emphasis added).  Still other cases address this type of preliminary injunctive relief without any reference to the term "constructive trust".  *See, e.g.*, *Citizens Bank of Pa. v. Meyers*, 872 A.2d 827 (Pa. Super. 2005).  Instantly, the relief sought by Appellant, *i.e.*, to prevent dissipation of the Hildreth deal proceeds pending the litigation, was clear regardless of whether such relief is properly termed a temporary "constructive trust", and we proceed with this understanding in mind.

recognized that EQT could be harmed by Defendants' dissipation of the Hildreth proceeds, but it concluded the harm of denying Defendants access to their ill-gotten gains was higher. The [trial] court's analysis was wrong as a matter of law." *Id.* at 53.

In assessing the evidence supporting EQT's request for preliminary injunctive relief in this regard against the six **Warehime** factors, the trial court did acknowledge the first factor, immediate and irreparable harm to EQT, was shown. Trial Court Opinion, 10/23/14, at 7-8. "EQT faces the risk that allegedly profligate opposing parties will spend all proceeds of the Hildreth deal and any subsequent business, thus reducing EQT's ability to collect any future judgments." *Id.* Indeed, we conclude that finding is supported by the record, as Appellee Bochter testified that $525,000 of the $950,000 made from the Hildreth deal was already disbursed. N.T., 6/5-6, 10/14, at 165-166.[5] However, the trial court determined the second and third factors, *i.e.*, the preliminary injunction will not substantially harm Appellees, and any relief will restore the parties to their respective positions, were not met. *Id.*

> [Appellees] would be denied access to a significant sum of money made in the exercise of that profession until such a time as the underlying action here is resolved. These are very serious harms for

---

[5] Notwithstanding this testimony, Appellees assert that EQT presented no evidence of dissipation or likelihood of dissipation. Appellees' Brief at 15. However, as noted infra, the trial court did determine Appellees would likely need to access those funds for further capital investment.

small operators in a dynamic business that requires significant capital investments to be made on short notice.

*Id.* at 8.

We agree with EQT that the trial court misapplied the **Warehime** factors. In **Ambrogi v. Reber**, 932 A.2d 969 (Pa. Super. 2007), *appeal denied*, 952 A.2d 673 (Pa. Super. 2008), the defendants made an argument, similar to the trial court's position here, that restrictions on certain assets would interfere with its ability to conduct its business.

> [Defendants/Appellants] contend that the preliminary injunction entered by the trial court in this case imposes an unfair and intolerable burden by preventing them from running their business in the accustomed manner. They also complain that the preliminary injunction changes, rather than preserves, the *status quo* between the parties because it places Appellees in a better position than they occupied before the injunction.

*Id.* at 978-979.

In response, the **Ambrogi** Court noted that because the goal of a preliminary injunction was to preserve the *status quo* prior to the wrongful act, the inability to use assets generated by the wrongful act cannot be considered a hardship to the defendants. *Id.* at 979. "The relevant standard requires that an injunction must address the *status quo* as it existed between the parties before the event that gave rise to the lawsuit, not to the situation as it existed after the alleged wrongful act but before entry of the injunction." *Id.* The Court held "that Pennsylvania law does not preclude a trial court from granting a preliminary injunction to prevent

- 14 -

dissipation of assets," and affirmed the trial court's preliminary injunction. *Id.* at 975.

Like the defendants position in *Ambrogi*, the trial court here focuses on the *status quo* at the time the preliminary injunction would have taken effect rather than the *status quo* prior to alleged improper conduct by Appellees in securing the Hildreth deal. *See* Trial Court Opinion, 10/23/14, at 7-8. Viewed from the proper timeframe, we conclude Appellees are not subject to a greater harm by an inability to use the disputed funds in their ongoing business, because such allegedly ill-gotten funds would not have been available to them then. *See Ambrogi*, *supra* at 975. Thus, we conclude the trial court's denial of preliminary injunctive relief limiting the dissipation of the Hildreth deal proceeds involved a "rule of law upon which the court relied[, which] was palpably erroneous or misapplied." *W. Penn Specialty MSO, Inc.*, *supra*.

The trial court also deems the fifth *Warehime* factor, the relief is suited to abate the harm, is unmet.[6] Trial Court Opinion, 10/23/14, at 8.

_____

[6] The trial court, in its October 23, 2014 opinion, did not specifically address the remaining *Warehime* factors in connection with its denial of preliminary injunctive relief in restricting further dissipation of the Hildreth deal proceeds. We conclude, based on our review of the record, that these do not present an impediment to relief. The trial court has acknowledged generally that EQT's right to relief is likely. "[Appellees] use of EQT's GIS led to one deal for a discrete and known amount of money." Trial Court Opinion, 10/23/14, at 7. "To establish a clear right to relief, the party seeking an injunction need not prove the merits of the underlying claim, but need only demonstrate that substantial legal questions must be resolved to

*(Footnote Continued Next Page)*

- 15 -

EQT asserts the trial court "erred by holding that a constructive trust would not abate Defendants' past competition using EQT's proprietary information." EQT'S Brief at 54. The trial court held as follows. "The offending activity here is in the past. [Appellees] have no access to EQT's GIS database, and thus no ability… to repeat it. Estopping their future business dealings will not change this, for good or ill, **nor will placing the proceeds of the Hildreth deal into trust**." Trial Court Opinion, 10/23/14, at 8 (emphasis added).

Again, we agree with EQT that the trial court relied on an erroneous application of the law. The trial court conflates the harm intended to be abated by EQT's distinct requests for injunctive relief. EQT's first request sought to restrict Appellees from competing through continued use of EQT's proprietary information. EQT's Complaint, 4/1/14, at 33. Contrary to the trial court's conclusion, this was not the harm sought to be abated by its request for injunctive relief to restrict the dissipation of the Hildreth deal proceeds. *Id.* at 34. Clearly, prohibiting dissipation will not prevent future use of proprietary information, but that is not the targeted harm in EQT's request for this relief, which was to prevent Appellees from contriving to become judgment-proof. EQT's Brief at 51; **see also Ambrogi**, **supra** at

_(Footnote Continued)_ ───────────────────

determine the rights of the parties." **SEIU Healthcare Pa. v. Commonwealth**, 104 A.3d 495, 506 (Pa. 2014) (citation omitted). Additionally, we discern no adverse impact to the public interest. **See generally Warehime**, **supra**.

975. Consequently, we conclude that the trial court misapplied the law and the **Warehime** factors to the facts of this case and unreasonably denied EQT's request to restrict the dissipation of the Hildreth deal proceeds. Accordingly, we reverse that aspect of the trial court's August 4, 2014 order and remand for further proceedings consistent with this memorandum.

In its final issue, EQT faults the trial court for failing to rule on its remaining requests for relief, including enjoining Appellees from continued possession of EQT's property, compelling return of any such property, and providing an accounting. EQT's Brief at 54-55. Relative to these requests the trial court noted as follows. "[EQT] request[s] other forms of possible injunctive relief, including a number of points which would be properly raised in a Motion to Compel, but as those were never argued or briefed, they will not be addressed." Trial Court Opinion, 10/23/14, at 4 n.1. We discern no error. While EQT insists it consistently argued for these bases of relief, we note the first two share the same infirmity of proof denoted by the trial court relative to its denial of preliminary injunctive relief connected to the requested restriction on competition by Appellees. We agree also the request for an accounting is more properly seen as a motion to compel but the trial court is free to address that request in light of our remand of this case.

Based on all the preceding, we affirm the trial court's evidentiary ruling refusing to apply adverse inferences to its determination of the merits

of EQT's request for a preliminary injunction. Additionally, to the extent EQT challenges the trial court's discovery rulings, the same are interlocutory and not subject to our review. We further affirm that portion of the trial court's August 4, 2014 order denying EQT's request for a preliminary injunction relative to its request to restrict Appellees' competition with EQT. However, because the trial court misapplied the law and the **Warehime** factors to EQT's request for preliminary injunctive relief in the form of a restriction on Appellees from dissipation of the Hildreth deal proceeds, we reverse that aspect of the trial court's August 4, 2014 order and remand for further proceedings consistent with this memorandum.[7]

Order affirmed in part and reversed in part. Case remanded. Motion to Strike granted. Jurisdiction relinquished.

_____

[7] On January 12, 2015, Appellees filed with this Court a motion to strike Hearing Exhibit 3 from EQT's Amended Designation of record, because it is not contained in the certified record. A review of the record reveals that, at the conclusion of the third day of the hearing on the preliminary injunction, the trial court directed the parties to submit a stipulation and or objections relative to the admission of exhibits. N.T., 6/5-6,10/14, at 471. No such stipulation or copy of the exhibits is contained in the record certified to this Court. Accordingly, Appellee's motion is granted and the exhibit was not considered in our disposal of the merits of this appeal. **See PHH Mortg. Corp. v. Powell**, 100 A.3d 611, 614 (Pa. Super. 2014) (noting "this Court may consider only the facts that have been duly certified in the record when deciding an appeal," and striking attachments to a brief that did not appear in the certified record).

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  7/24/2015