J-A09035-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| CABOT OIL & GAS CORPORATION, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| VERA SCROGGINS, | |
| Appellant | No. 867 MDA 2015 |

Appeal from the Order Entered May 1, 2015
in the Court of Common Pleas of Susquehanna County
Civil Division at No.: 2013-1303-CP

BEFORE: FORD ELLIOTT, P.J.E., JENKINS, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:           **FILED JULY 07, 2016**

Appellant, Vera Scroggins, appeals from the trial court's order approving and entering the stipulated permanent injunction between her and Appellee, Cabot Oil & Gas Corporation, as an order of court.[1]  We affirm.[2]

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] Appellant's notice of appeal also includes the trial court's April 23, 2015 discovery order finding that she waived the attorney-client privilege. (**See** Notice of Appeal, 5/19/15, at 1; **see also id.** at attachment, April 23, 2015 Order).  "In general, an appeal may be taken as of right only from a final order, which encompasses a judgment, decision, decree, sentence and adjudication, **see** Pa.R.A.P. 102, and, in relevant part, is defined as one that disposes of all claims and all parties."  **K.H. v. J.R.**, 826 A.2d 863, 869 (Pa. Super. 2003) (citing Pa.R.A.P. 341(a)).  Therefore, we have amended the caption accordingly.

[2] On October 13, 2015, Appellee filed a motion to dismiss or quash Appellant's appeal.  On November 20, 2015, we denied Appellee's motion
*(Footnote Continued Next Page)*

We take the following facts from our independent review of the certified record. Appellee is a natural gas exploration and production company that operates in the Marcellus Shale region of Pennsylvania. In 2006, Appellee began entering into oil and gas leases with landowners in this territory. Appellee also owns property in Susquehanna County.

Appellee's exploration and production requires the use of heavy earth-moving and specialized equipment for all stages of the drilling process. To ensure the safety of its personnel on the site, as well as others, Appellee restricts well site access by posting signs and contracting with a security company to prevent unauthorized individuals from entering and trespassing on Appellee's well site. In spite of warnings, Appellant has trespassed onto Appellee's properties several times.

Specifically, between March 25, 2012 and October 13, 2013, Appellant trespassed onto Appellee's well sites approximately twelve times. During the incidents, she ignored posted restricted access/no trespassing signs, attempted to interfere with Appellee's operations, created a safety hazard to personnel and operations, examined and videotaped equipment, impeded truck access to the sites, and had to be escorted off of these locations by on-site personnel. On one particular occasion, Appellee contacted the Pennsylvania State Police, but after the officers left the scene, Appellant

_(Footnote Continued)_ ⎯⎯⎯⎯⎯⎯⎯⎯⎯

_per curiam_ without prejudice to it raising the issue to the merits panel. We will address Appellee's argument in this memorandum.

- 2 -

returned, bypassed safety barricades, and walked into an active demolition zone.

On October 17, 2013, Appellee filed a complaint in trespass and a petition for a preliminary injunction to enjoin Appellant from entering its property. The same day, the court entered a temporary injunction. On October 21, 2013, the court held a hearing on the preliminary injunction, and entered a preliminary injunction order prohibiting Appellant from entering property owned or leased by Appellee. Appellant filed motions to vacate the preliminary injunction on November 14 and December 31, 2013. On March 28, 2014, after a hearing, the court entered a modified preliminary injunction again prohibiting Appellant from trespassing on property owned or leased by Appellee, and precluding her from being within 100 feet of the well pads. On September 19, 2014, Appellee filed a motion to enter the stipulated permanent injunction between the parties as an order of court.

On October 14, 2014, Appellee filed a motion for indirect civil contempt against Appellant for her violation of the March 28, 2014 order. Upon consideration of the motion, the court "specifically ordered that [Appellant] not be within 100 feet of either side of . . . access road[,]" but chose not to punish Appellant. (Order, 10/30/14, at 1). On November 6, 2014, the court entered an order making the stipulated permanent injunction an order of court, but vacated the order on December 11, 2014 in

- 3 -

order to allow the parties the opportunity to present testimony. On February 3, 2015, Appellee again filed a contempt petition against Appellant for violating the modified preliminary injunction.

On February 25, 2015, the court held a hearing on the contempt petition and the stipulated permanent injunction. The trial court found Appellant in indirect civil contempt, and set a hearing date of April 23, 2015 to determine appropriate sanctions. Also during the hearing, the court found that Appellant waived the attorney-client privilege as to all communications regarding settlement and her counsel's authority to enter into negotiations on her behalf, and it continued the hearing for *in camera* review of emails produced by Appellant's attorney.

To prepare for the continued hearing, which the court also scheduled for April 23, 2015, Appellee subpoenaed certain documents from Appellant's attorneys who were involved in the settlement discussions. Counsel objected on the ground of the attorney-client privilege. In response, on March 31, 2015, Appellee filed a motion for clarification or, alternatively, a petition to issue a rule to show cause why Appellant should not be held to have waived the attorney-client privilege as to all settlement communications.

After the April 23, 2015 hearing, the court issued an order finding that Appellant had waived the attorney-client privilege as to settlement discussions; and that her attorneys had authority to enter into the stipulated

permanent injunction on her behalf. The court also took argument and evidence on the appropriate sanction for Appellant's contempt, and ordered her to pay $1,000.00 toward Appellee's legal fees. On April 27 and May 26, 2015, two of Appellant's counsel, who had been involved in the settlement negotiations on her behalf, withdrew from representation.

On May 1, 2015, the court issued an order making the stipulated permanent injunction an order of court on the basis of its finding that Appellant authorized her attorneys to enter into it. On May 19, 2015, Appellant filed a notice of appeal.[3]

Appellant raises three issues for this Court's review:

1. Did [Appellee] have enough material in its own files to determine whether or not [Appellant] gave her legal counsel express authority to enter into a stipulated permanent injunction agreement, without having to subpoena her attorneys and their client files, thus invading the attorney-client privilege?

2. Did [Appellant] waive the attorney-client privilege by stating that she did not give her counsel express authority to enter into a stipulated permanent injunction agreement which contained terms with which she did not agree?

3. Was [Appellant] wrongly punished for indirect civil contempt with a $1,000 fine and an indefinite jail term alternative based upon [Appellee's] attorney fees incurred enforcing the trial court's order of March 27, 201[4] . . . after her alleged violation of January 16, 2015?

---

[3] Appellant filed a timely concise statement of matters complained of on appeal on July 7, 2015 pursuant to the court's order. *See* Pa.R.A.P. 1925(b). On August 28, 2015, the court entered a statement in lieu of opinion. *See* Pa.R.A.P. 1925(a).

- 5 -

(Appellant's Brief, at 5) (unnecessary italics and capitalization omitted).

In her first issue, Appellant argues that Appellee had enough material in its possession that it was not required to subpoena her attorneys for documents. (*See id.* at 5, 12-13, 16-17). This issue is waived.

It is well settled that "[i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a). In violation of our appellate rules, Appellant fails to identify where in the record she raised this issue. (*See* Appellant's Brief, at 12-17); Pa.R.A.P. 2117(c) (appellant shall identify where and how it raised issue in trial court). "[I]t is not the responsibility of this Court to scour the record to prove that an appellant has raised an issue before the trial court, thereby preserving it for appellate review." *Phillips v. Lock*, 86 A.3d 906, 920 (Pa. Super. 2014) (citation omitted). Indeed, our independent review of the certified record reveals that Appellant did not advance this argument in the trial court. Therefore, this issue is waived. *See* Pa.R.A.P. 302(a); *Harber Phil. Central City Offices, Ltd. v. LPCI Ltd. Partnership*, 764 A.2d 1100, 1106 (Pa. Super. 2000), *appeal denied*, 782 A.2d 546 (Pa. 2001) (waiving issue where appellant failed to comply with Rule 2117(c), and review by Court revealed it was not raised in trial court).

In her second argument, Appellant challenges the trial court's finding that she waived the attorney-client privilege as to settlement discussions

and her attorneys' authority to enter into the stipulated permanent injunction on her behalf. (*See* Appellant's Brief, at 5, 17-20).

Before reaching the merits of this issue, we must address Appellee's argument that the court's discovery decision should have been appealed pursuant to the collateral order doctrine and therefore the appeal is untimely. (*See* Appellee's Brief, at 17-19).

Pursuant to Pennsylvania Rule of Appellate Procedure 313:

> **(a) General rule.** An appeal **may** be taken as of right from a collateral order of an administrative agency or lower court.
>
> **(b) Definition.** A collateral order is an order separable from and collateral to the main cause of action where the right involved is too important to be denied review and the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost.

Pa.R.A.P. 313 (emphasis added). We recognize that Rule 313 "**permits** appeals from collateral orders, and our courts have held that discovery orders involving claims of privilege" are collateral orders. *Gormley v. Edgar*, 995 A.2d 1197, 1200 (Pa. Super. 2010) (citation omitted) (emphasis added). However, we find the reasoning of *Jones v. Faust*, 852 A.2d 1201, 1204 (Pa. Super. 2004), to be instructive in this matter.

In *Jones*, we observed that:

> [A]lthough collateral orders **may** be appealed within 30 days of their entry, the substance of the collateral order is not forever precluded when an appeal is not taken within this period. As the order involved here is a discovery matter, by definition preliminary and in addition concerned with resolution of collateral issues, clearly no finality is implicated[.]

- 7 -

*Jones*, *supra* at 1203 (emphasis added).

Likewise here, Appellee's argument, that Appellant's appeal should be quashed for her failure to appeal the court's discovery order pursuant to Rule 313, must fail, even if she potentially could have done so. *See id.* We conclude that Appellant was not mandated to file an appeal pursuant to the collateral order doctrine, and therefore was not precluded from raising this discovery issue in her appeal of the final order. *See* Pa.R.A.P. 313 (a); *Jones*, *supra* at 1204. We now turn to the merits of Appellant's issue.

> As to the attorney-client privilege, we recognize:
>
>> In a civil matter counsel shall not be competent or permitted to testify to confidential communications made to him by his client, nor shall the client be compelled to disclose the same, unless in either case this privilege is waived upon the trial by the client.

42 Pa.C.S.A. § 5928.

"Whether the attorney-client privilege . . . protects a communication from disclosure is a question of law. This Court's standard of review over questions of law is *de novo*, and the scope of review is plenary." *St. Luke's Hosp. of Bethlehem v. Vivian*, 99 A.3d 534, 540 (Pa. Super. 2014), *appeal denied*, 114 A.3d 417 (Pa. 2015) (citation omitted). We find this Court's discussion in *Salsman v. Brown*, 51 A.3d 892 (Pa. Super. 2012), to be instructive in this matter.

In *Salsman*, the Browns appealed from an order granting the Salsmans' petition to enforce a settlement agreement. *See Salsman*,

*supra* at 893. The Court set forth the following background facts of the case:

> On March 15, 2010, Patrick L. Beirne, Esquire, who represented the Browns, sent a letter to the Salsmans' attorney offering to settle the matter for $23,000 along with other stipulations. On April 12, 2010, the Salsmans' attorney sent a letter to Attorney Beirne accepting the offer. On October 13, 2010, the Salsmans filed a petition to enforce this settlement agreement because the Browns had not complied with the terms of the settlement.
>
> On October 18, 2010, the trial court issued a rule to show cause why the settlement agreement should not be enforced. On November 15, 2010, Attorney Beirne filed a petition to withdraw his appearance in this matter because the Browns terminated his representation. On December 6, 2010, the Browns, through new counsel, filed an answer to the petition to enforce settlement averring they never authorized Attorney Beirne to make an offer to the Salsmans to settle the matter.
>
> . . . Prior to the hearing [on the petition to enforce the settlement agreement], the Salsmans subpoenaed Attorney Beirne to testify regarding these letters. Attorney Beirne asked the trial court to quash the subpoena arguing that he would not be permitted to testify because the Browns did not waive their attorney client privilege. The trial court then quashed the subpoena.

*Id.* (record citation omitted).

In analyzing whether the trial court properly quashed the subpoena on the basis of the attorney-client privilege, the Court observed:

> the party who has asserted the attorney-client privilege must initially set forth facts showing that the privilege has been properly invoked; then the burden shifts to the party seeking disclosure to set forth facts showing that disclosure will not violate the attorney-client privilege, *e.g.*, because the privilege has been waived or because some **exception** applies.

- 9 -

One such exception occurs when the client has attacked the integrity and professionalism of counsel. ***See e.g., Doll v. Loesel****,* [] 136 A. 796, 798 ([Pa.] 1927) (Attorney was entitled to respond to a direct attack on his integrity and "privilege could not be availed of to keep him silent under the imputation[.]"); ***Loutzenhiser v. Doddo****,* [] 260 A.2d 745, 748 ([Pa.] 1970) ("A communication between an attorney and his client is not privileged if . . . the attorney is rebutting the client's attack on his integrity or professional competence."); ***Commonwealth v. Chmiel****,* [] 738 A.2d 406, 414 ([Pa.] 1999) ("[T]he client's attack on the competence of counsel serves as a waiver of the privilege as to the matter at issue.").

***Id.*** at 894-95. (one case citation omitted) (emphasis in original).

Based on the foregoing law, the Court found that the Browns questioned the integrity and professionalism of their attorney when they argued that he acted beyond his authorization in sending the settlement letter. ***See id.*** at 895. Therefore, the Court held that the correspondence between the Browns and counsel was not subject to the attorney-client privilege. ***See id.***

Likewise, here, at the February 25, 2015 hearing, Appellant testified that she did not give her attorneys authority to settle the underlying case. (***See*** N.T. Hearing, 5/25/15, at 4). Her position is that she only authorized them to negotiate a settlement, and that they entered into the stipulated permanent injunction on her behalf without her authorization. (***See*** Appellant's Brief, at 10, 18).

Therefore, we conclude that, based on ***Salsman***, "[Appellant's] own argument, that [her attorneys were] not authorized to [settle the underlying

case], resulted in an exception to the attorney client privilege because [Appellant was] questioning the integrity and professionalism of [her attorneys in entering into the agreement without prior authorization]." ***Salsman***, ***supra*** at 895. Hence, the trial court properly found that Appellant waived the attorney-client privilege. ***See St. Luke's Hosp. of Bethlehem***, ***supra*** at 540.

Moreover, we do not find Appellant's attempts to distinguish ***Salsman*** to be legally persuasive. (***See*** Appellant's Brief, at 17-20). First, her argument that she did not question the integrity of her attorneys, but merely "did not give [them] express authority to settle[,]" fails where it was the allegation that counsel acted outside his authority that the Court in ***Salsman*** found "question[ed] [his] integrity and professionalism." (Appellant's Brief, at 18); ***Salsman***, ***supra*** at 895. Second, Appellant alleges that she did not waive the attorney-client privilege because she authorized counsel to send the September 9, 2014 settlement email to Appellee's attorneys, unlike the Browns in ***Salsman*** whose attorney sent a similar settlement communication without their consent. (***See*** Appellant's Brief, at 18). However, this argument fails. Even if Appellant "perceived that email as simply another step in the negotiation process[,]" the fact remains that, like the Browns, her argument against enforcement of the stipulated permanent injunction is that counsel acted outside of their authority, thus "attack[ing]

the integrity and professionalism of counsel." (Appellant's Brief, at 18); *Salsman*, *supra* at 895.[4]

Appellant also attempts to distinguish *Salsman* on the basis that the Browns terminated their counsel, and she did not do so here. (*See* Appellant's Brief, at 19). Preliminarily, there is no indication that this was a material factor that the Court considered before holding that the Browns waived the attorney-client privilege. *See Salsman*, *supra* at 895. Also, the email chain cited by Appellant in support of this argument contains her counsel's detailing of the consequences that could occur if she were to back out of the agreed-upon permanent injunction, including their withdrawal. (*See* Email Correspondence from Scott Michelman, Esquire, to Appellant, 9/15/14, at 2) (noting that counsel would withdraw if Appellant backed out of the agreement). Therefore, Appellant's refusal to honor the stipulated permanent injunction on the basis of counsel's lack of authority effectively resulted in their withdrawal, just as the allegation by the Browns did. (*See* Order re Oral Motion of Wiltold Walzcak, Esquire, 4/23/15; Praecipe for

_____

[4] Moreover, we note that Appellant's argument that, although she was aware of the September 9, 2014 email, she did not give counsel the authority to settle the case is suspect where the email she approved stated: "Amy and Jeremy: [Appellant] would not budge on the . . . change in paragraph 4, bullet 2, but she has agreed to everything else[.] If [Appellee] agrees we have a deal." (Email Correspondence from Witold Walczak, Esquire, to Amy L. Barrette, Esquire, 9/09/14).

Withdrawal of Appearance of Scott Michelman, Esquire, 4/27/15); **Salsman**, **supra** at 893.

Finally, we observe that Appellant utterly ignores the alternate finding of the **Salsman** Court, that the Browns waived the attorney-client privilege by putting the communications directly at issue. **See Salsman**, **supra** at 895 n.3. The same observation applies here. For all of these reasons, Appellant's attempts to distinguish **Salsman** from the current case fail.

In her third issue, Appellant argues that the trial court erred when it found her in indirect civil contempt for violating the modified preliminary injunction. (**See** Appellant's Brief, at 5). We disagree.

> Each court is the exclusive judge of contempts against its process. The contempt power is essential to the preservation of the court's authority and prevents the administration of justice from falling into disrepute. When reviewing an appeal from a contempt order, the appellate court must place great reliance upon the discretion of the trial judge. On appeal from a court's order holding a party in contempt of court, our scope of review is very narrow. We are limited to determining whether the trial court committed a clear abuse of discretion.

> A court may exercise its civil contempt power to enforce compliance with its orders for the benefit of the party in whose favor the order runs but not to inflict punishment. A party must have violated a court order to be found in civil contempt. The complaining party has the burden of proving by a preponderance of evidence that a party violated a court order. . . . To impose civil contempt the trial court must be convinced beyond a reasonable doubt from the totality of evidence presented that the contemnor has the present ability to comply with the order.
>
>       \*     \*     \*

. . . We are mindful that this Court defers to the credibility determinations of the trial court with regard to the witnesses who appeared before it, as that court has had the opportunity to observe their demeanor. . . .

*Garr v. Peters*, 773 A.2d 183, 189 (Pa. Super. 2001) (citations and quotation marks omitted).

Here, the March 28, 2014 modified preliminary injunction expressly directed that Appellant not enter any of Appellee's well pads, be on access roads within 100 feet of the well pads, stop or remain present on public roads within 100 feet of the well pads, obstruct traffic entering or leaving Appellee's access roads, come in contact with Appellee's equipment, vehicles, or structures, or cause others to engage in activities prohibited by the order. (*See* Order, 3/28/14, at unnumbered pages 1-3). The order also notified Appellant that, if she violated its terms, she may be subject to possible civil contempt proceedings, and if found to be in contempt, to fines, attorney fees, and/or incarceration. (*See id.* at 2).

The court expressly found:

[Appellant] and her witnesses were not credible. [W]itnesses offered by [Appellee] were not [Appellee's] employees and had little to gain by misrepresentation of the facts to the [c]ourt. What we found happened was that despite an injunction in place [Appellant] stopped and trespassed upon an access road of [Appellee] just prior to motoring down the road to a neighboring driveway to then park.

(Trial Court Statement, 8/28/15, at unnumbered page 3).

We note that Appellant does not argue that there was insufficient evidence on the record to support the finding of contempt, only that the

- 14 -

low

court erred in placing too much weight on the testimony of Appellee's witnesses, and not enough on her own, whom she maintains "were credible in testifying that she did not violate the order of March 2[8], 2014." (Appellant's Brief, at 33). This argument fails because the court expressly found that Appellant and her witnesses were incredible, and, as stated previously, we defer to the court's credibility determinations on the witnesses before it. (*See* Trial Ct. Statement, at unnumbered page 3); *see also Garr*, *supra* at 189.

Hence, after our independent review of the record, and based on our standard of review, we conclude that the trial court did not err when it found Appellant in indirect civil contempt of its modified preliminary injunction order. *See id.* Appellant's third issue fails.[5]

---

[5] Appellant argues that the contempt imposed on her was criminal in nature, rather than civil. (*See* Appellant's Brief, at 32-33). Appellant waived this issue by failing to raise it in her Rule 1925(b) statement. (*See* Appellant's Rule 1925(b) Statement, 7/07/15, at 1-2); Pa.R.A.P. 1925(b)(4)(vii); *Burkett v. St. Francis Country House*, 133 A.3d 22, 36 (Pa. Super. 2016) (waiving issue for failure to raise it in Rule 1925(b) statement).

She also maintains that the court erred in denying her request for a "[r]ehearing" of the contempt issue. (*See* Appellant's Brief, at 30-32). This issue is waived for her failure to include it in her statement of questions involved. (*See id.* at 5); Pa.R.A.P. 2116(a) ("No question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby."); *see also Linde v. Linde Ent., Inc.*, 118 A.3d 422, 438 n.15 (Pa. Super. 2015), *appeal denied*, 129 A.3d 1243 (Pa. 2015) (waiving claim that was not raised in statement of questions involved). Moreover, it appears that counsel requested a continuance so that settlement discussions could be convened. (*See* N.T. Hearing, 4/23/15, at

*(Footnote Continued Next Page)*

Finally, we note that, in the argument section of her brief, Appellant raises the issue that the trial court erred when it found she "g[a]ve her attorneys express authorization to settle and without her signature there was no settlement." (Appellant's Brief, at 20) (unnecessary capitalization omitted). However, this issue was not raised in her statement of questions involved; nor is it fairly suggested thereby.[6] **See** Pa.R.A.P. 2116(a). Therefore, it is waived. **See id.**; **see also Linde**, **supra** at 438 n.15.

Moreover, it would not merit relief.

> When reviewing a trial court's decision to enforce a settlement agreement, our scope of review is plenary as to questions of law, and we are free to draw our own inferences and reach our own conclusions from the facts as found by the court. However, we are only bound by the trial court's findings of fact which are supported by competent evidence. The prevailing party is entitled to have the evidence viewed in the light most favorable to its position. Thus, we will only overturn the trial court's

_(Footnote Continued)_ _____

5-6). The court denied the request for a continuance, but allowed the parties half an hour to discuss a potential settlement. (**See id.** at 5). Under the facts of the case, the court did not abuse its discretion where the parties had engaged in settlement discussions for years. **See Baysmore v. Brownstein**, 771 A.2d 54, 57 (Pa. Super. 2001) ("The trial court is vested with broad discretion in the determination of whether a request for a continuance should be granted, and an appellate court should not disturb such a decision unless an abuse of that discretion is apparent.") (citation omitted).

[6] Appellant also claims that the terms of the injunction are unconscionable. (**See** Appellant's Brief, at 26). This issue also is waived because Appellant did not include it in her statement of questions involved. (**See id.** at 5); **see also** Pa.R.A.P. 2116(a). Additionally, Appellant fails to identify where this issue was raised in the trial court, and our review of the record does not reveal that it was. (**See** Appellant's Brief, at 26-30); **see also** Pa.R.A.P. 302; Pa.R.A.P. 2117(c); **Harber Phil. Central City Office, supra** at 1106.

decision when the factual findings of the court are against the weight of the evidence or its legal conclusions are erroneous.

*Bennett v. Juzelenos*, 791 A.2d 403, 406 (Pa. Super. 2002) (citations omitted).

Further, "[a]s a general rule, signatures are not required unless such signing is expressly required by law or by the intent of the parties." *Shovel Transfer and Storage, Inc. v. Pa. Liquor Control Bd.*, 739 A.2d 133, 136 (Pa. 1999) (citation omitted). Importantly:

> [T]he mere presence of signature lines does not determine whether the parties intended to be bound only upon the execution of the document by all the signatories. Instead, the inquiry is properly directed to whether the parties agreed to the terms in question and intended to be bound by the terms of the contract.

*Id.* at 138 (citation omitted); *cf. Franklin Interiors v. Wall of Fame Mgmt. Co.*, 511 A.2d 761, 762 (Pa. 1986) (language that contract was not "deemed accepted until it [is] signed by an authorized officer or manager" made signature a requirement for enforceability); *Commerce Bank/Pa. v. First Union Nat. Bank*, 911 A.2d 133, 146 (Pa. Super. 2006) (unsigned contract enforceable where it "does **not** state that it is effective only if each party signs it.") (emphasis in original).

Here, the court found that Appellant authorized her attorneys to enter into the stipulated permanent injunction with Appellee on her behalf. (*See* Trial Court Opinion, 8/28/15, at unnumbered page 3). The court explained:

> The electronic mail correspondence between [Appellee] and [Appellant's] attorneys demonstrated that there was an

- 17 -

agreement. Moreover, one of [Appellant's] legal counsel offered his opinion that he was authorized to enter into a stipulation on her behalf in order to settle the issues of trespass and the details of the injunction to which [Appellant] had agreed. The record shows that [Appellant] did agree to the offers of [Appellee] in the main, and only disagreed subsequently after she had talked to an "advisor" of hers. Such discussion occurred after her legal counsel, by electronic mail, notified [Appellee's] legal counsel that she was in agreement to terms of a stipulation which later were made an order of court.

(*Id.*)

The record supports the court's findings. Appellant authorized her attorneys to engage in settlement negotiations and to send the September 9, 2014 email, which expressly stated, "If [Appellee] agrees [to the proposed changes,] we have a deal." (Email Correspondence from Wiltold Walczak, Esquire, to Amy L. Barrette, Esquire, 9/09/14). Appellant's counsel testified that they were authorized to enter into a settlement agreement. (*See* N.T. Hearing, 4/23/15, at 38-39, 41-42). The testimony is supported by the evidence of email correspondence between Appellant and counsel. (*See, e.g.*, Email from Scott Michelman, Esquire, 9/15/14, at 2). In fact, Appellant's counsel testified that Appellant "convey[ed] to [him] that she accepted and would agree to the negotiated permanent injunction[.]" (*See* N.T. Hearing, 4/23/15, at 39). Finally, although the stipulated agreement contained a signature line, there is no language in the contract that only makes it enforceable upon signature of the parties. (*See* Order on Stipulated Permanent Injunction, 9/09/15, at 1-2).

Based on these facts, and our review of the record as a whole, we conclude that the trial court properly found that Appellant authorized counsel to enter into the stipulated permanent injunction with Appellee on her behalf. *See Bennett*, *supra* at 406. Therefore, this claim, even if properly preserved, would not merit relief.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 7/7/2016